## MONTAGUE & COMPANY *v.* LOWRY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 46. Submitted October 27, 1903.—Decided February 23, 1904.

An association was formed in California by manufacturers of, and dealers in, tiles, mantels and grates; the dealers agreed not to purchase materials from manufacturers who were not members and not to sell unset tiles to any one other than members for less than list prices which were fifty per cent higher than the prices to members; the manufacturers, who were residents of States other than California agreed not to sell to any one other than members; violations of the agreement rendered the member subject to forfeiture of membership. Membership in the association was prescribed by rules and dependent on conditions, one of which was the carrying of at least $3,000 worth of stock, and whether applicants were admitted was a matter for the arbitrary decision of the association. In an action by a firm of dealers in tiles, mantels and grates, in San Francisco, whose members had never been asked to join the association and who had never applied for admission therein, and which did not always carry $3,000 worth of stock, to recover damages under § 7 of the Anti-Trust Act of July 2, 1890—

*Held* that although the sales of unset tiles were within the State of California and although such sales constituted a very small portion of the trade involved, agreement of manufacturers without the State not to sell to any one but members was part of a scheme which included the enhancement of the price of unset tiles by the dealers within the State and that the whole thing was so bound together that the transactions within the State were inseparable and became a part of a purpose which when carried out amounted to, and was, a combination in restraint of interstate trade and

commerce. *Addyston Pipe & Steel Co.* v. *United States,* 175 U. S. 211, followed; *Hopkins* v. *United States,* 171 U. S. 578; *Anderson* v. *United States,* 171 U. S. 604, distinguished.

*Held* that the association constituted and amounted to an agreement or combination in restraint of trade within the meaning of the act of July 2, 1890, and that the parties aggrieved were entitled to recover threefold the damages found by the jury.

*Held* that the amount of attorney's fees allowed as costs under the act is within the discretion of the trial court and as such discretion is reasonably exercised this court will not disturb the amount awarded.

THIS action was brought under section 7 of the act of July 2, 1890, 26 Stat. 209 ; 3 Comp. Stat. 3202, commonly called the Anti-Trust Act. The section reads as follows :

" SEC. 7. Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any Circuit Court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee."

Plaintiffs in error (defendants below) seek to review the judgment of the Circuit Court of Appeals for the Ninth Circuit, 115 Fed. Rep. 27, affirming a judgment for plaintiffs, entered in the Circuit Court for the Northern District of California, upon a verdict of a jury. 106 Fed. Rep. 38.

It appeared in evidence on the trial in the United States Circuit Court that the plaintiffs for many years prior to the commencement of this action had been copartners, doing business as such in the city of San Francisco in the State of California, and dealing in tiles, mantels and grates, and that The Tile, Mantel and Grate Association of California, and the officers and members thereof, had since, on or about the—day of January, 1898, constituted under that name an unincorporated organization composed of wholesale dealers in tiles, mantels and grates, who were citizens and residents of the city and county of San Francisco, or the city of Sacramento, or the city of San José in the State of California, and such organization was also composed of the manufacturers of tiles, mantels.

and grates, who were residents of other States, and engaged in the sale of their manufactured articles (among others) to the various other defendants in the State of California. There were no manufacturers of tiles within the State of California, and all the defendants who were residents of that State and who were also dealers in tiles, in the prosecution of their business, procured the tiles from outside the State of California and from among those manufacturers who were made defendants herein. The manufacturers and dealers were thus engaged in the prosecution of a business which, with reference to the sales of tiles, amounted to commerce between the States. Under these circumstances the dealers in tiles, living in San Franciso, or within a radius of 200 miles thereof, and being some of the defendants in this action, together with the Eastern manufacturers of tiles, who are named as defendants herein, formed an association called The Tile, Mantel and Grate Association of California. The objects of the association, as stated in the constitution thereof, were to unite all acceptable dealers in tiles, fireplace fixtures and mantels in San Francisco and vicinity, (within a radius of 200 miles,) and all American manufacturers of tiles, and by frequent interchange of ideas advance the interests and promote the mutual welfare of its members.

By its constitution, article I, section 1, it was provided that any individual, corporation or firm engaged in or contemplating engaging in the tile, mantel or grate business in San Francisco, or within a radius of 200 miles thereof, (not manufacturers,) having an established business and carrying not less than $3,000 worth of stock, and having been proposed by a member in good standing and elected, should, after having signed the constitution and by-laws governing the association, and upon the payment of an entrance fee as provided, enjoy all the privileges of membership. It was provided in the second section of the same article that all associated and individual manufacturers of tiles and fireplace fixtures throughout the United States might become non-resident members of the association upon the payment of an entrance fee as provided, and after having signed the constitution and by-laws govern-

ing the association. The initiation fee was, for active members, $25, and for non-resident members $10, and each active member of the association was to pay $10 per year as dues, but no dues were charged against non-residents.

An executive committee was to be appointed, whose duty it was to examine all applications for membership in the association and report on the same to the association. It does not appear what vote was necessary to elect a member, but it is alleged in the complaint that it required the unanimous consent of the association to become a member thereof, and it was further alleged that by reason of certain business difficulties there were members of the association who were antagonistic to plaintiffs, and who would not have permitted them to join, if they had applied, and that plaintiffs were not eligible to join the association for the further reason that they did not carry at all times stock of the value of $3,000.

The by-laws, after providing for the settlement of disputes between the members and their customers, by reason of liens, foreclosure proceedings, etc., enacted as follows, in article III:

"Sec. 7. No dealer and active member of this association shall purchase, directly or indirectly, any tile or fireplace fixtures from any manufacturer or resident or traveling agent of any manufacturer not a member of this association, neither shall they sell or dispose of, directly or indirectly, any unset tile for less than list prices to any person or persons not a member of this association, under penalty of expulsion from the association.

"Sec. 8. Manufacturers of tile or fireplace fixtures or resident or traveling agents or manufacturers selling or disposing, directly or indirectly, their products or wares to any person or persons not members of the Tile, Mantel and Grate Association of California, shall forfeit their membership in the association."

The term "list prices," referred to in the seventh section, was a list of prices adopted by the association, and when what are called "unset" tiles were sold by a member to any one not a member, they were sold at the list prices so adopted, which

were more than fifty per cent higher than when sold to a member of the association.

The plaintiffs had established a profitable business and were competing with all the defendants, who were dealers and engaged in the business of purchasing and selling tiles, grates and mantels in San Francisco prior to the formation of this association. The plaintiffs had also before that time been accustomed to purchase all their tiles from tile manufacturers in Eastern States, (who were also named as parties defendants in this action,) and all of those manufacturers subsequently joined the association. The plaintiffs were not members of the association and had never been, and had never applied for membership therein and had never been invited to join the same.

The proof shows that by reason of the formation of this association the plaintiffs have been injured in their business, because they were unable to procure tiles from the manufacturers at any price, or from the dealers in San Francisco, at less than the price set forth in the price list mentioned in the seventh section of the by-laws, *supra*, which was more than fifty per cent over the price at which members of the association could purchase the same. Before the formation of the association the plaintiffs could and did procure their tiles from the manufacturers at much less cost than it was possible for them to do from the dealers in San Francisco after its formation.

There was proof on the part of the defendants below that the condition of carrying $3,000 worth of stock, as mentioned in the constitution, had not always been enforced, but there was no averment or proof that the article of the constitution on that subject had ever been altered or repealed.

The jury rendered a verdict for $500 for the plaintiffs, and, pursuant to the provisions of the seventh section of the act, judgment for treble that sum, together with what the trial court decided to be a reasonable attorney's fee, was entered for the plaintiffs.

*Mr. William M. Pierson* for plaintiffs in error :

The association is not obnoxious to the provisions of the Sherman Anti-Trust Act.

This case can be distinguished from the *Trans-Missouri Case*, 166 U. S. 290, and the *Joint Traffic Case*, 171 U. S. 505. So far as the transactions between the dealers and the manufacturers are concerned, the association fixes no tariff or prices whatever; and it must be observed generally that the association itself does no business. It is lawful for a man to decline to work for another man or class of men, or to do business with another man or class of men, as he sees fit; and what is lawful for one man to do in this regard, several men may agree to act jointly in doing, and may make express and simultaneous declaration of their purpose. The lawfulness of a provision as between dealers and manufacturers, such as is contained in the constitution and by-laws of the plaintiffs in error, is impliedly recognized in the *Hopkins Case*, 171 U. S. 578, and is aptly recognized and approved in the *Anderson Case*, 171 U. S. 604. See also *U. S.* v. *Greenhut*, 51 Fed. Rep. 205; *In re Greene*, 52 Fed. Rep. 104; *U. S.* v. *Nelson*, 52 Fed. Rep. 646; *Dueber Mfg. Co.* v. *Howard Co.*, 55 Fed. Rep. 851; *S. C.*, 14 C. C. A. 14; *Gibbs* v. *McNealy*, 102 Fed. Rep. 594; *Steamship Co.* v. *McGregor*, L. R. 23 Q. B. 598; *Bohn* v. *Hollis*, 54 Minnesota, 223.

Within these authorities and on a view of the constitution and by-laws of the association in question, it will appear that the provisions touching transactions between dealers and manufacturers are not obnoxious to the act of Congress, and it will appear further that the association in question has none of the elements of a monopoly. Indeed, the object of the association is said to be to unite all acceptable dealers and all American manufacturers.

An association cannot be in restraint of trade when its doors are open to all in the trade, and it fixes no prices whatever. The only limitation was to have established homes with $3,000 worth of stock.

The transactions in unset tiles at list prices are local transactions, intra-state transactions, in no respect taking on the quality of interstate commerce and being purely local, are not within the purview of the act. *Addyston Pipe & Steel Co.* v. *U. S.*, 175 U. S. 211. Assuming, however, for argu-

ment, the transactions in unset tiles to be along the line of interstate commerce,—they are so trifling, incidental and remote in their bearing upon interstate trade and commerce as to be what mathematicians call negligible quantities which may be left out of consideration without impairing the general result. *Trans-Missouri case,* the *Joint Traffic case,* and *Hopkins case, supra.*

The attorney fee allowed was excessive. Plaintiffs below asked for $10,000 damages and were only allowed $500 and the fee is out of proportion.

*Mr. J. C. Campbell* for defendant in error:

The Tile, Mantel and Grate Association of California is a combination declared to be illegal by the act of July 2, 1890, for it is in restraint of trade or commerce among the several States, and was formed to and does monopolize such trade or commerce. *United States* v. *Freight Association,* 166 U. S. 290, 323; *Addyston Pipe & Steel Co.* v. *United States,* 175 U. S. 211, 241, 244; *United States* v. *E. C. Knight Co.,* 156 U. S. 1, 16; *United States* v. *Coal Dealers' Association,* 85 Fed. Rep. 252; *Hopkins* v. *United States,* 171 U. S. 578, and see p. 597; *Anderson* v. *United States,* 171 U. S. 604, distinguished.

The counsel fee was fair and reasonable.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The question raised by the plaintiffs in error in this case is, whether this association, described in the foregoing statement of facts, constituted or amounted to an agreement or combination in restraint of trade within the meaning of the so-called Anti-Trust Act of July 2, 1890?

The result of the agreement when carried out was to prevent the dealer in tiles in San Francisco, who was not a member of the association, from purchasing or procuring the same upon any terms from any of the manufacturers who were such members, and all of those manufacturers who had been accustomed to sell to the plaintiffs were members. The non-

member dealer was also prevented by the agreement from buying tiles of a dealer in San Francisco who was a member, excepting at a greatly enhanced price over what he would have paid to the manufacturers or to any San Francisco dealer who was a member, if he, the purchaser, were also a member of the association. The agreement, therefore, restrained trade, for it narrowed the market for the sale of tiles in California from the manufacturers and dealers therein in other States, so that they could only be sold to the members of the association, and it enhanced prices to the non-member as already stated.

The plaintiffs endeavored in vain to procure tiles for the purposes of their business from these tile manufacturers, but the latter refused to deal with them because plaintiffs were not members of the association. It is not the simple case of manufacturers of an article of commerce between the several States refusing to sell to certain other persons. The agreement is between manufacturers and dealers belonging to an association in which the dealers agree not to purchase from manufacturers not members of the association, and not to sell unset tiles to any one not a member of the association for less than list prices, which are more than fifty per cent higher than the prices would be to those who were members, while the manufacturers who became members agreed not to sell to any one not a member, and in case of a violation of the agreement they were subject to forfeiting their membership. By reason of this agreement, therefore, the market for tiles is, as we have said, not only narrowed but the prices charged by the San Francisco dealers for the unset tiles to those not members of the association are more than doubled. It is urged that the sale of unset tiles, provided for in the seventh section of the by-laws, is a transaction wholly within the State of California and is not in any event a violation of the act of Congress which applies only to commerce between the States. The provision as to this sale is but a part of the agreement, and it is so united with the rest as to be incapable of separation without at the same time altering the general purpose of the agreement. The whole agreement is to be construed as

one piece, in which the manufacturers are parties as well as the San Francisco dealers, and the refusal to sell on the part of the manufacturers is connected with and a part of the scheme which includes the enhancement of the price of the unset tiles by the San Francisco dealers. The whole thing is so bound together that when looked at as a whole the sale of unset tiles ceases to be a mere transaction in the State of California, and becomes part of a purpose which, when carried out, amounts to and is a contract or combination in restraint of interstate trade or commerce.

Again, it is contended the sale of unset tiles is so small in San Francisco as to be a negligible quantity; that it does not amount to one per cent of the business of the dealers in tiles in that city. The amount of trade in the commodity is not very material, but even though such dealing heretofore has been small, it would probably largely increase when those who formerly purchased tiles from the manufacturers are shut out by reason of the association and their non-membership therein from purchasing their tiles from those manufacturers, and are compelled to purchase them from the San Francisco dealers. Either the extent of the trade in unset tiles would increase between the members of the association and outsiders, or else the latter would have to go out of business, because unable to longer compete with their rivals who were members. In either event, the combination, if carried out, directly effects a restraint of interstate commerce.

It is also contended that, as the expressed object of the association was to unite therein all the dealers in San Francisco and vicinity, the plaintiffs had nothing more to do than join the association, pay their fees and dues and become like one of the other members. It was not, however, a matter of course to permit any dealer to join. The constitution only provided for "all acceptable dealers" joining the association. As plaintiffs were not invited to be among its founders, it would look as if they were not regarded as acceptable. However that may be, they never subsequently to its formation applied for admission. It is plain that the question of their admission, if they had so applied, was one to be arbi-

trarily determined by the association. The constitution provided for the appointment of an executive committee, whose duty it was to examine all applications for membership in and to report on the same to the association, after which it was to decide whether the applicants should be admitted or not. If they were not acceptable the applicants would not be admitted, and whether they were or not, was a matter for the arbitrary decision of the association. Its decision that they were not acceptable was sufficient to bar their entrance.

Again, it appears that plaintiffs were not eligible under the constitution, because they did not always carry stock worth $3,000, which by section 1 of article I, was made a condition of eligibility to membership. True, it was stated in evidence that this provision had not been enforced, but there was no averment or proof that it had been repealed, and there was nothing to prevent its enforcement at any time that an application was made by any one who would not come up to the condition. The case stands, therefore, that the plaintiffs had not been asked to join the association at its formation; that they did not fill the condition provided for in its constitution as to eligibility, and that if they had applied their application was subject to arbitrary rejection.

The plaintiffs, however, could not, by virtue of any agreement contained in such association, be legally put under obligation to become members in order to enable them to transact their business as they had theretofore done, and to purchase tiles as they had been accustomed to do before the association was formed.

The consequences of non-membership were grave, if not disastrous, to the plaintiffs. It has already been shown how the prices of tiles were enhanced so far as plaintiffs were concerned, and how by means of this combination interstate commerce was affected.

The purchase and sale of tiles between the manufacturers in one State and dealers therein in California was interstate commerce within the *Addyston Pipe case*, 175 U. S. 211. It was not a combination or monopoly among manufacturers simply, but one between them and dealers in the manufactured article,

which was an article of commerce between the States. *United States* v. *E.: C. Knight Company*, 156 U. S. 1, did not therefore cover it. It is not brought within either *Hopkins* v. *United States*, 171 U. S. 578, or *Anderson* v. *United States*, 171 U. S. 604. In the first case it was held that the occupation of the members of the association was not interstate commerce, and in the other that the subject matter of the agreement did not directly relate to, embrace or act upon interstate commerce, for the reasons which are therein stated at length. Upon examination we think it is entirely clear that the facts in the case at bar bear no resemblance to the facts set forth in either of the above cases and are not within the reasoning of either. The agreement directly affected and restrained interstate commerce.

The case we regard as a plain one and it is unnecessary to further enlarge upon it.

There is one other question which, although of secondary importance, is raised by the plaintiffs in error. After the rendition of the verdict the plaintiffs below claimed a reasonable attorney's fee under the seventh section of the act, and made proof of what would be a reasonable sum therefor, from which it appeared that it would be from $750 to $1,000. The trial court awarded to the plaintiffs $750. The verdict being only for $500, the plaintiffs in error claimed that the allowance was an improper and unreasonable one. The trial took some five days. The judgment in effect pronounced the association illegal. The amount of the attorney's fee was within the discretion of the trial court, reasonably exercised, and we do not think that in this case such discretion was abused.

The judgment is

*Affirmed.*