## SAMUEL E. HOWELL V. STATE OF NEBRASKA.

### FILED FEBRUARY 20, 1909.   No. 15,120.

1. **Monopolies:** CRIMINAL INDICTMENT: SUFFICIENCY. To charge a criminal violation of the first section of art. II, ch. 91a, Comp. St. 1907, "To protect trade and commerce against unlawful restraints and monopolies," commonly called the "Junkin Act," the indictment or information must allege that the acts complained of were in restraint of trade within this state.

2. ——: CRIMINAL PROSECUTION: INSTRUCTIONS. A number of persons, dealers in coal and other fuels, in the city of Omaha, created and became members of a local organization known as the "Omaha Coal Exchange," and were subsequently indicted under what is called the "Anti-Trust Laws" of this state. Upon the trial of one of the indicted parties the constitution of the exchange was introduced in evidence by the state, and which contained an article prohibiting the members from soliciting trade by the personal appeals of themselves or their agents, but allowing the use of printed postal cards and nonaddressed printed matter inclosed in envelopes, and providing that the exchange should not interfere with prices made between members, or as to whether the same should be at wholesale or retail prices. The court instructed the jury that that article of the constitution was "in itself" a violation of the law of this state, and, if they found that it was in force and carried out by the defendants, the accused was guilty of the crime charged. The instruction is *held* erroneous; that it was proper for the jury to take the article into consideration in arriving at their verdict, but that it did not, of itself, foreclose further inquiry as to defendant's guilt.

3. ——: MEMBERSHIP. It was shown by the evidence that the accused on trial had not, personally, become a member of the Omaha Coal Exchange, but that he was a member and president of another organization which was, itself, a member of the exchange; that he was the president of the Omaha Coal Exchange and chairman of its board of directors, which had the management of its business, and that he acted in both capacities. *Held*, That this constituted him, to all intents and purposes, a member of the exchange and liable criminally to the same extent as though he had personally signed the constitution and been admitted to membership.

ERROR to the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Reversed.*

Hall & Stout and W. J. Connell, for plaintiff in error.

William T. Thompson, Attorney General, and Grant G. Martin, contra.

REESE, C. J.

Plaintiff in error, with more than '50 other persons, was indicted by the grand jury of Douglas county for a violation of that part of art. II, ch. 91a, Comp. St. 1907, relating to "Restraints, Monopolies, Rebates," commonly known as the "Anti-Trust Law," or the "Junkin Act." The indictment consists of 9 counts covering 23 pages of closely typewritten matter and is too long to be here set out. The prosecution grows out of the creation and existence of an organization, or, as alleged, a combination of dealers in coal and wood in that county, who organized, set on foot, and continued the organization known as the "Omaha Coal Exchange," the object and purpose of which, it is alleged, was to fix and establish the price of fuels to be sold at retail in the city of Omaha and the nearby country, and to restrain the trade therein. Plaintiff in error was put upon his trial, which resulted in a general verdict finding him "guilty of restraint of trade as he stands charged in the information." A motion for a new trial was filed, which being overruled, a judgment of conviction was entered. The case is brought to this court by proceedings in error. The record is voluminous, consisting of nearly 3,000 pages. There are 159 assignments of alleged errors in the petition. The proper consideration of the time at our disposal forbids a detailed review of the evidence, the instructions, or even to notice all the assignments.

The first count charges the persons indicted with having "unlawfully and feloniously joined themselves together and formed a trust and combination, the purpose and effect of which trust and combination is to restrain trade, to increase prices of coal and other fuels, to prevent com-

32

petition in the sale of coal and other fuels, to fix the price of coal and other fuels, and to agree not to sell any coal and other fuels below a certain fixed figure, and that said (defendants, naming them) are unlawfully members of said trust and combination, and are unlawfully aiding, advising, abetting, counseling and acting in pursuance to an agreement entered into by the members of said trust and combination, which trust and combination has unlawfully prevented, and does unlawfully prevent, competition in the sale of coal and other fuels, and have unlawfully agreed not to sell coal and other fuels below a certain figure, and have unlawfully prevented the sale of coal and other fuels below a certain fixed figure determined by said trust and combination, with the intent then and there and thereby unlawfully, feloniously and arbitrarily to prevent competition and fix an established price at which said coal and other fuels are sold." This count is attacked upon the ground that it is nowhere charged that the alleged trust, combination, or monopoly was with the intent and for the purpose of fixing and controlling prices of coal and other fuels in this state. The language of the statute under which the indictment was drawn provides: "Every contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce, within this state, is hereby declared to be illegal," etc. It is evident that the object of the legislation was and is to make criminal the formation of such conspiracies within this state for the purpose of restraining or controlling trade and commerce within its borders, as there is no authority making such acts criminal when interstate commerce is to be thereby affected. It follows that that count of the indictment must be held incomplete and does not charge the commission of an offense.

The second and subsequent counts, in other respects quite similar to the first, are not obnoxious to the same criticism, for they contain the averment omitted from that count. They are assailed upon other grounds, but as the members of the court are not in entire harmony in their

views upon these questions, and as all agree that the judgment should be reversed for another and independent reason, these counts will not be further noticed.

As may be inferred from what we have already said, the evidence submitted to the jury was very voluminous, consisting of the oral testimony of witnesses and of documentary evidence. Among the latter was the constitution and by-laws of the Omaha Coal Exchange, of which it was alleged and substantially proved that the accused were members. Plaintiff in error, personally, was not a member of the exchange, but was a member and president of the West Omaha Coal and Ice Company, which was a member of said Omaha Coal Exchange. He was elected to the office of president of said Omaha Coal Exchange, held the office and discharged the duties thereof, and was also chairman of the board of directors, to whom was given the general management of the exchange. This, in the opinion of the writer, made him to all intents and purposes, a member of the Omaha Coal Exchange and liable to a criminal prosecution with other members of that organization, if such organization was criminal and in violation of law. He was in the chair, presiding over the meeting of the exchange, at the time of the adoption of the amended constitution and by-laws on April 24, 1903. Among other articles of the constitution then adopted was article 12, which reads as follows: "Soliciting referred to in the by-laws hereafter written shall apply to members of any firm having a membership in this exchange, their agents, clerks and drivers, and shall consist of the personal or verbal introduction of the subject, the personal presentation of a card or other token of business or any other act calculated to effect a sale; but it is understood that printed postals with the address only on one side and nonaddressed printed matter inclosed in addressed envelopes are not within the inhibition of this section. The exchange shall not interfere with prices made between members of the exchange, or as to whether the same shall be at wholesale or retail prices."

The twenty-eighth instruction given to the jury by the court is as follows: "You are instructed that article 12 of the constitution of the Omaha Coal Exchange is in itself a violation of the law of this state; and if you find from the evidence, beyond a reasonable doubt, that article 12 of said constitution of said exchange was in force at any time between July 1, 1905, and the 14th day of September, 1906, and that during that period, or at any time during that period, the defendant and one or more of the defendants in this case were members of said exchange, and that they unlawfully, wilfully, purposely and intentionally conspired or agreed together to carry out the terms of said section of the constitution, in the city of Omaha, county of Douglas, state of Nebraska, then you are instructed that the defendant has been carrying on his business in restraint of trade and in violation of the laws of the state of Nebraska, and you should convict him of the crime set forth in the indictment." After the jury had retired and had been deliberating for some time, they returned and asked for "additional information on instruction No. 28 given by the court on its own motion," when the court gave the following as an additional instruction upon article 12: "In compliance with the request of the jury, the court explains instruction No. 28 as follows: The court instructed the jury in instruction No. 28 that article 12 of the constitution of the Omaha Coal Exchange, if kept in force by agreement of the defendant and one or more other members of the Omaha Coal Exchange at the same time, at any time between July 1, 1905, and September 14, 1906, or if the defendant and one or more members of the Omaha Coal Exchange at the same time carried on their coal business in obedience or compliance with section 12 of said constitution of the Omaha Coal Exchange in Omaha, Douglas county, Nebraska, the defendant would be guilty of doing business in restraint of trade. For the information of the jury the court gives the jury a correct copy of said article 12 of the constitution of the Omaha Coal Exchange. 'Article 12. Soliciting referred to in the

by-laws hereafter written shall apply to members of any firm having a membership in this exchange, their agents, clerks and drivers, and shall consist of the personal or verbal introduction of the subject, the personal presentation of a card or other token of business or any other act calculated to effect a sale; but it is understood that printed postals with the address only on one side and nonaddressed printed matter inclosed in addressed envelopes are not within the inhibition of this section.   The exchange shall not interfere with prices made between members of the exchange, or as to whether the same shall be at wholesale or retail prices.'   This instruction is to be read in connection with instruction 28 of the original instructions."

We are unable to find anything in the by-laws bearing upon the matter of soliciting.   So far as the general criminal character of the Omaha Coal Exchange and its proceedings are concerned, there may be a difference of opinion, but upon this subject the writer entertains no doubt. Some of its acts may not be open to criticism; others are. However, we cannot see that the instruction above quoted should have been given.   We are unable to comprehend how that twelfth article, singled out and taken by itself, is "in itself a violation of the law of the state," nor can we see that the additional instruction aided the twentyeighth.   It is not for us, nor was it for the jury, to infer any hidden, ulterior or criminal purpose secreted or concealed in, but unexpressed by, the language of the article when considered "in itself."   It is somewhat doubtful if any real purpose or meaning can be found in the language used.   It is probable that its purpose was to prohibit members of the exchange from personally, or by its agents or employees, soliciting trade, but permitting it to be done by circulars or other printed matter of the character mentioned.   It may be, if such was the purpose of the article, that indulging in personal solicitation of trade might induce active competition, and thereby offer a temptation to underbid and thus depress prices to a figure

below a scale "fixed," but that idea does not appear as matter of law in the language used "in itself." The jury were not informed that the article might be considered by them in arriving at their conclusion as to its purpose or the purposes of the "exchange," but that it was "in itself" a violation of law, thus foreclosing further inquiry.

In the construction of this statute and the article of the constitution copied, we are cited to the decision of the supreme court of the United States in the case of *Hopkins v. United States*, 171 U. S. 578, and by some it is thought to be decisive of this question. In that case the members of the Kansas City Live Stock Exchange, a voluntary incorporated association, had agreed upon certain rules governing the transaction of their business, the tenth of which prohibited the employment of any agent, solicitor, or employee, except upon a stipulated salary, not contingent upon the commission earned, and that not more than three solicitors should be employed at one time by a commission firm or corporation, resident or nonresident of Kansas City. The eleventh rule prohibited the members from sending or causing to be sent a prepaid telegram or telephone message quoting markets or giving information as to the condition of the same under the penalty of a fine. The ground upon which that case was decided was that the business of the Kansas City Live Stock Exchange was not interstate business, and therefore was not subject to control by act of congress under which the suit had been instituted. What the decision would have been had that question been decided otherwise is subject to conjecture. It is true that the court holds that the rules referred to are not violative of the law of congress, but this is based solely upon the fact that the business to which they refer is not interstate commerce. In *Addyston Pipe and Steel Co. v. United States*, 175 U. S. 211, 243, the same judge who wrote the opinion in the *Hopkins* case says: "The cases of *Hopkins v. United States*, 171 U. S. 578, and *Anderson v. United States*, 171 U. S. 604, are not relevant. In the *Hopkins* case it was held that the business of the

members of the Kansas City Live Stock Exchange was not interstate commerce, and hence the act of congress did not affect them." The same is stated, in substance, in *Montague & Co. v. Lowry*, 193 U. S. 38; *Swift & Co. v. United States*, 196 U. S. 375; *Loewe v. Lawlor*, 208 U. S. 274. We thus refer to the *Hopkins* case at some length because it is insisted by some to be decisive of this case, which it clearly is not.

For the error in giving the twenty-eighth instruction, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

ROSE, J., not sitting.