WARE–KRAMER TOBACCO CO. et al. v. AMERICAN TOBACCO CO. et al.

(Circuit Court, E. D. North Carolina, Raleigh Division. June 16, 1910.)

No. 558.

1. EQUITY (§ 153*)—PLEADING—REQUISITES.

A bill in equity should be construed to mean what it fairly conveys by a fairly exact use of English speech.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 386; Dec. Dig. § 153.*]

___

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. ACTION (§ 5*)—VIOLATION OF STATUTES—RIGHT TO RECOVER.**

By violating a criminal or penal statute one does not render himself liable to a private citizen unless the unlawful conduct is the proximate cause of, or results in, some special injury to such citizen's business or property.

[Ed. Note.—For other cases, see Action, Dec. Dig. § 5.*]

**3. MONOPOLIES (§ 12*)—ANTI-TRUST LAW—PURPOSE.**

The prohibitory provisions of Anti-Trust Law July 2, 1890, c. 647, § 7, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202), apply to all contracts in restraint of interstate or foreign trade or commerce, without exception or limitation, and are not confined to those in which the restraint is unreasonable.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

**4. MONOPOLIES (§ 28*)—ANTI-TRUST LAW—PRIVATE SUITS FOR VIOLATION.**

Under the express terms of Anti-Trust Law July 2, 1890, c. 647, § 7, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202), one injured in business or property by another through a combination or conspiracy to restrain or monopolize interstate trade may sue for his damage.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. § 28.*]

**5. MONOPOLIES (§ 28*)—ANIT-TRUST LAW—PRIVATE SUIT FOR VIOLATION--PLEADING—SUFFICIENCY.**

A complaint, under Anti-Trust Law July 2, 1890, c. 647, § 7, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202), for damages, is not insufficient as failing to show a violation of the law or injury to plaintiff, where it sets out the origin and history of one of defendant companies in absorbing competing companies engaged in manufacturing tobacco; a history of the formation, growth, etc., of the other defendant company; absorption of the latter by the former, under an agreement to keep the purchase secret, all done in furtherance of the first company's purpose to monopolize the business of manufacturing tobacco and cigarettes in violation of such law; a conspiracy between the two companies to monopolize the supply of manufactured tobacco throughout the country; that in furtherance of a general plan to restrain interstate trade in tobacco, and monopolize its manufacture and sale, defendants first resorted to unfair and oppressive means, fully set out, to prevent plaintiff company's organization; that plaintiff's stockholders and prospective stockholders were threatened with injury in business if they pressed the plaintiff's business; that one of plaintiff's incorporators was offered inducements to abandon plaintiff; that false and unjust statements were circulated concerning plaintiff; that plaintiff established a prosperous interstate business and would have grown but for defendants' unlawful acts; that plaintiff's customers were unlawfully taken away by defendants' threats and inducements; that cigarettes were sold below cost; that jobbers and dealers in plaintiff's territory were given free goods and extra discounts to press sales as against plaintiff's goods; that defendants' employé obtained employment as plaintiff's sales manager to injure and did injure plaintiff's business in a specified way, as part of defendants' scheme; that defendants conspired to destroy plaintiff's business, etc.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 28.*]

**6. PLEADING (§ 68*)—SUFFICIENCY—ALLEGATIONS ON BELIEF.**

An allegation that plaintiff has "reason to believe," and therefore "alleges," etc., is sufficient under Revisal N. C. 1905, § 489, requiring matter to be alleged as of plaintiff's knowledge or upon "information and belief."

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 140; Dec. Dig. § 68.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit by Ware-Kramer Tobacco Company and another against the American Tobacco Company and others. On demurrer to the amended complaint. Demurrers overruled.

F. A. Daniels, C. C. Daniels, F. A. Woodard, and N. T. Green, for plaintiffs.

Aycock & Winston, Junius Parker, and F. L. Fuller, for defendants.

CONNOR, District Judge. The plaintiff, in accordance with the opinion filed herein, May 8, 1910 (178 Fed. 117), upon the motion made by defendant to strike out certain portions of the complaint, has filed an amended complaint, containing all of the material averments in the original. Defendants join in a demurrer, the specific grounds of which are:

(1) That the complaint does not state any facts showing that defendants, or either of them, have violated the federal anti-trust law— have monopolized, or attempted to monopolize, or have contracted, combined, or conspired to restrain interstate or foreign trade or commerce, or that such has been the effect of the acts and facts therein alleged.

(2) That it does not state any facts showing that plaintiff has been injured by any violation of the anti-trust law, or any acts monopolizing, or attempting to monopolize, any contracts, combinations, or conspiracies to restrain interstate or foreign trade or commerce, as injuriously affecting the plaintiff.

(3) That it does state facts showing that the acts complained of are only such as have always been permissible in competition, and only such as are not only not forbidden, but are specially encouraged, by the federal anti-trust law.

It is neither necessary, nor desirable, at this time, and in the present condition of the record, to do more than ascertain whether, in view of such decisions as have been made throwing light upon the interpretation of the statute, the facts alleged, with the inferences to be drawn therefrom, most favorable to plaintiff, the action can be maintained. It is conceded that, before an affirmative answer can be given to this question, it must appear from allegations in the complaint:

(1) That defendants, the American Tobacco Company and the Wells-Whitehead Tobacco Company, have entered into "a contract, or combination, in the form of a trust, or otherwise," or conspiracy in restraint of interstate trade or commerce; or "that defendants have monopolized, or attempted to monopolize, or have combined or conspired to monopolize a part of the trade or commerce among the several states, or with some foreign nation." These, and each of them, are "the things forbidden and declared to be unlawful" by the act.

(2) That plaintiff has been injured, as alleged, in its "business or property" by reason of the unlawful acts of defendants.

These are the essential elements, upon the existence of which the plaintiff's action is founded. Act July 2, 1890, c. 647, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202).

The complaint, at considerable length, with fullness of detail, and in substantial respects corresponding to declarations, petitions, and bills in equity, held sufficient by the federal courts, sets out the origin, history, growth, and conduct of the defendant American Tobacco Company in absorbing competing companies, or companies engaged in the manufacture of tobacco in all of its forms.   The complaint proceeds to set forth a history of the formation, growth, etc., of the defendant Wells-Whitehead Tobacco Company, and, after describing the various attempts of the American Tobacco Company to destroy its business, sets forth the manner in which it acquired a controlling interest in the stock of said Wells-Whitehead Company, alleging an agreement between the officers of both companies that the purchase should be kept secret, etc.   All of this, it is alleged, was in furtherance of the purpose of the American Tobacco Company to monopolize the business of manufacturing tobacco and cigarettes in violation of the provisions of the federal anti-trust law.   The complaint, in this respect, is drawn upon the lines, and in substantial accordance with the petition, or bill, in People's Tobacco Co. v. Am. Tobacco Co., 170 Fed. 406, 95 C. C. A. 566, and sustained by the Circuit Court of Appeals of the Fifth Circuit.

In Swift v. United States, 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518, Mr. Justice Holmes, discussing a demurrer to the bill in equity filed by the government for the purpose of enjoining the "meat trust," for alleged violation of the statute, says:

"The scheme, as a whole, seems to us to be within reach of the law.   The constituent elements, as we have stated them, are enough to give the scheme a body and, for all that we can say, accomplish it.   Moreover, whatever we may think of them separately, when we take them up as distinct charges, they are alleged sufficiently as elements of the scheme.   It is suggested that the several acts charged are lawful and that intent can make no difference.   But they are bound together as parts of a single plan.   The plan may make the parts unlawful.   The statute gives this proceeding against combinations in restraint of trade among the states and attempts to monopolize the same."

In Addyston Pipe & Steel Co. v. United States, 175 U. S. 211, at page 244, 20 Sup. Ct. 96, at page 108 (44 L. Ed. 136), Mr. Justice Peckham says:

"We have no doubt that where the direct and immediate effect of a contract or combination among particular dealers in a commodity is to destroy competition between them and others, so that the parties to the contract or combination may obtain increased prices for themselves, such contract or combination amounts to a restraint of trade in the commodity, even though contracts to buy such commodity at the enhanced price are continually being made. Total suppression of the trade in the commodity is not necessary in order to render the combination one in restraint of trade.   It is the effect of the combination in limiting and restricting the right of each of the members to transact business in the ordinary way, as well as its effect upon the volume or extent of the dealing in the commodity, that is regarded.   All the facts and circumstances are, however, to be considered in order to determine the fundamental question whether the necessary effect of the combination is to restrain interstate commerce."

The learned justice, after an exhaustive and careful analysis of the allegations in the bill, writing for the unanimous court, overrules the demurrer.   In the complaint herein is found, "after all the specific

charges, a general allegation that the defendants have conspired with one another to monopolize the supply of manufactured tobacco, cigars, and cigarettes throughout the United States," and, as said by Judge Holmes:

"This general allegation of intent colors and applies to all the specific charges in the bill. Whatever may be thought concerning the proper construction of the statute, a bill in equity is not to be read and construed as an indictment would have been read and construed a hundred years ago; but it is to be taken to mean what it fairly conveys to a dispassionate reader, by a fairly exact use of English speech."

In People's Tobacco Co. v. A. T. Co., supra, Judge Shelby, discussing the demurrer to the complaint, says:

"At great length, and with minute details, the petition alleges and describes this combination or conspiracy in restraint of interstate trade, or commerce, showing that it is such as is condemned by the first section of the act. With equal fullness, there are allegations of an attempt by defendants, with other conspirators, to monopolize the trade or commerce in tobacco among the several states—such an attempt and conspiracy as is condemned by the second section of the act." Montague v. Lowry, 193 U. S. 38, 24 Sup. Ct. 307, 48 L. Ed. 608.

In United States v. MacAndrews & Forbes Co. (C. C.) 149 Fed. 823, an indictment drawn under the anti-trust act was considered upon demurrer by District Judge Hough. He says:

"The criterion as to whether any given business scheme falls within the prohibition of the statute is its effect upon interstate commerce, which need not be a total suppression of trade or a complete monopoly; it is enough if its necessary operation tends to restrain interstate commerce and to deprive the public of the advantage flowing from free competition."

The learned judge, after reciting the acts charged to have been committed by the defendant, says:

"Not only do the facts alleged show a combination producing a result detrimental to interstate commerce, but they also show concerted action to bring about that result, and the result, as shown, constitutes that 'virtual' monopoly in the interstate distribution of the substance manufactured by the corporate defendants which brings the matter within the decisions differentiating the modern use of the word 'monopoly' from that grant by royal patent which was the origin of the phrase."

This language is appropriate to the description given, in the complaint, of defendants' relation to the manufacture of tobacco and cigarettes.

It is, however, strongly and earnestly insisted that plaintiff fails to set forth any facts from which the court can see that it has been injured in its business or property by the character and conduct of defendants. The learned counsel says that if it be conceded, for the purpose of the argument, that defendant American Tobacco Company is a monopoly, and that, in securing the controlling interest in the stock of its codefendant, the Wells-Whitehead Tobacco Company, in the manner and under the circumstances set forth, it formed an unlawful combination, within the meaning of the act, subjecting both corporations to indictment or other proceedings by the government, yet that plaintiff shows no cause of action under the provisions of the

seventh section of the act, because in neither nor all of the acts alleged did it exceed what is recognized by the law as fair competition, and this the statute does not prohibit.    It is undoubtedly true, as said by counsel, that by violating a criminal or penal statute a person, either natural or corporate, does not render itself liable to be sued by a private citizen unless the unlawful conduct is the proximate cause of, or results in, some special injury to the business or property of the person bringing the action.    Counsel ask: May not defendants, although violators of the public law, until called to account by the sovereign, prosecute their business in a lawful way?    May they not engage in fair competition with others engaged in the same business?    May they not advertise their wares, undersell their competitors in open market, send their agents into the markets of the country and, by fair and well-recognized rules of competition, offer their goods for sale?    How, he asks, does this injure the public or "raise prices"—restrain or interfere with trade or commerce?    In construing the statute it must be kept in view that:

"Its prohibitory provisions apply to all contracts in restraint of interstate, or foreign, trade or commerce, without exception or limitation; and are not confined to those in which the restraint is unreasonable."

Hence, as said by Mr. Justice Peckham, in regard to a combination to establish rates:

"The claim that the company has the right to charge reasonable rates, and that, therefore, it has the right to enter into a combination with competing roads to maintain such rates, cannot be admitted. The conclusion does not follow from the premise. What one company may do, in the way of charging reasonable rates, is radically different from entering into an agreement with other and competing roads to keep up the rates to that point." United States v. Freight Ass'n, 166 U. S. 290, at page 339, 17 Sup. Ct. 540, at page 558, 41 L. Ed. 1007; United States v. Joint Traffic Ass'n, 171 U. S. 505, 19 Sup. Ct. 25, 43 L. Ed. 259.

It is the combination, or conspiracy, to restrain or to monopolize interstate trade, which is condemned, and if this is established an injury "done to the business or property" of "any person," by reason thereof, constitutes a cause of action.    Whether, under the language of the statute, the members of the illegal combination, or the conspiracy, may, in the prosecution of their business, resort to the legal methods open to those who are living in obedience to the law, with immunity from an action for injuries inflicted upon the business or property of others—that is, resort to fair competition—has not, so far as the industry of counsel has revealed, been decided.    The position of the plaintiff is that the unlawful combination and its members are "outlaws" and not within the pale of the protection conferred upon those who pursue a lawful calling in a lawful way.    The language of the statute (seventh section) is:

"Any person who shall be injured, in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act may sue," etc.

Chief Justice Fuller, in Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488, overruling a demurrer to the petition, says:

"It is charged that defendants formed a combination to directly restrain plaintiff's trade; that the trade to be restrained was interstate; that certain means to attain such restraint were contrived to be used and employed by defendants; and that thereby they injured plaintiff's property and business."

This was held sufficient. Judge Shelby, in People's Tobacco Co. v. American Tobacco Co., supra, discussing a demurrer to the petition substantially like the one before the court, says:

"It is plain that the petition need only aver, and state facts to show, that the defendants have committed one or more of the offenses condemned by the first and second sections of the act, that the plaintiff is a person injured within the meaning of the seventh section, and the amount of damages it has sustained by such injury."

In the light of these decisions, it would seem that the complaint sufficiently alleges facts bringing its grievance within the provisions of the act. It is not charged that the combination between the defendants was formed for the purpose of restraining plaintiff's interstate trade; this, of course, it could not do because the final act of forming a conspiracy or combination—the purchase of a controlling interest in the stock of the Wells-Whitehead Tobacco Company, by the American Tobacco Company—was during the month of July, 1904, whereas the Ware-Kramer Tobacco Company was not organized until October, 1904. The theory upon which the complaint is drawn is: That defendants, being an unlawful combination within the terms of the statute, in furtherance of its general plan, scheme, or purpose to restrain all interstate trade in manufactured tobacco and cigarettes, and to monopolize the manufacture and sale of tobacco, first resorted to unfair and oppressive means, fully set out, to prevent its organization. That one of their managing officers threatened the persons proposing to form and organize plaintiff corporation. That defendant "by fair means or foul" would destroy the proposed corporation. That threats were made by the officers of defendants to stockholders or prospective stockholders of plaintiff company, after it was organized, that, if they (some of them being directors and managing officers of plaintiff company) "continued to press the business of the Ware-Kramer Tobacco Company, the American Tobacco Company would take from such persons the sale of its products, particularly snuff, which such persons were, at that time, selling in large quantities." That, to another large stockholder, an officer in a bank, threats were made by an officer of the Wells-Whitehead Tobacco Company:

"That if he persisted in his efforts to make effective the organization, and to make prosperous the business of the Ware-Kramer Tobacco Company, he would find that his interests in enterprises in the business would be made to suffer."

That, to another person engaged in the tobacco warehouse business, in the town of Wilson, N. C., at which the American Tobacco Company and one of its allied companies bought large quantities of leaf tobacco, threats were made calculated to injure his business. That, to another person, one of the incorporators of the plaintiff company, a proposal was made that if plaintiff would surrender its charter all of the expenses incurred would be paid; that the machinery and supplies contracted for, or purchased, would be paid for and taken by defend-

ants, even if the same were worthless and had to be destroyed, and "that if such person would not proceed further with the Ware-Kramer Tobacco Company defendants would give him a place, the income of which would exceed $10,000 a year." That false and unjust statements were circulated by defendants, in regard to plaintiff, its business and goods, among others "that defendant American Tobacco Company had failed to kill the Wells-Whitehead Tobacco Company, and that, as a last resort, it had organized the Ware-Kramer Tobacco Company, with which to fight the Wells-Whitehead Tobacco Company." That, notwithstanding these, and other, wrongful acts of the defendants, the Ware-Kramer Tobacco Company organized, and that by reason of the large sums of money and the great amount of energy expended by plaintiff in advertising, introducing, and establishing a market for the sale of "White Roll" cigarettes, coupled with the superior quality of the same, and that they were in favor with the consumers of cigarettes, that the brand of "White Roll" cigarettes was on the 1st day of January, 1907, of large value, to wit, the sum of $150,-000. That the business of plaintiff in its southern territory, by reason of the large and well-established reputation and demand for certain of its brands, its business connection with jobbers, merchants, and others, the thorough way in which its goods were advertised and established, was valuable as property and was worth in the market $250,-000. "That by reason of its energy and business judgment, the superior quality of its goods, etc., the demand for plaintiff's goods increased until the summer of 1907 and, but for the unfair and unlawful methods adopted by defendants, and the unfair and unlawful acts of their officers' agents and employés, plaintiff's business would have grown and increased from year to year." That in 1906 plaintiff's business increased largely over that of the preceding year, and that plaintiff was shipping its goods into a number of states of the Union.

Plaintiff alleges: That, during the years named, defendants, by the means aforesaid and other means, such as maintaining a close watch and espionage upon plaintiff's shipments, maintaining a system of spies upon such shipments from the depot at Wilson, N. C., and communicating same to the defendant's officers, both in New York and Wilson, sending their representatives to different customers of plaintiff, and by threats, promises, and inducements, many of plaintiff's customers were unlawfully and unfairly taken from them. That this systematic espionage upon and interference with plaintiff's business continued until it was compelled to move to Norfolk, Va., to escape the same.

Plaintiff sets forth, among others, the following means resorted to by defendants to interfere with and restrain their trade: Using coupons in an unfair manner; selling cigarettes at, and below, the cost of production; paying jobbers extra discounts in territory where plaintiff's cigarettes were selling well; giving jobbers and dealers free goods to induce them to press the sale of their goods, as against plaintiff's goods, and by requiring dealers not to handle plaintiff's goods; by interfering with the labor of independent manufacturers; by making jobbers and dealers afraid to keep exposed to view or on their shelves,

where they could be seen, the goods of plaintiff for fear the American Tobacco Company would injure the business of such dealer or jobber; by making jobbers and dealers afraid to advertise plaintiff's goods; by the refusal of the American Tobacco Company to sell to and by purposely delaying the shipment and delivery of goods ordered by jobbers and dealers who sold, or advertised, the goods of plaintiff.

Plaintiff, in addition to the foregoing, alleges specifically: That, during the year 1905, it received a proposition from a cigarette dealer in China to manufacture, for him, a large number of cigarettes for the Chinese trade. That plaintiff made for said customer a large order for cigarettes, which were shipped as directed, accepted, and paid for. That said order promised to furnish a market for at least 7,000,-000 cigarettes a month. That the vice president of defendant, by means of the espionage aforesaid, ascertained that plaintiff had received said order and made said shipment and immediately communicated with one of its employés, giving him directions to "ascertain to what port these goods were shipped and the name of the consignee. If you cannot learn the name, perhaps you can find out the markings on the case"—concluding: "A car load means to us about five million cigarettes. If we get this information I think we can shut off their market." That this information was obtained and the market was "shut off" to plaintiff's great damage. Finally, plaintiff alleges: That defendant W. M. Carter was in the employment of defendant American Tobacco Company for some time prior to the year 1909. That during the year 1908 he proposed to take a block of stock in plaintiff company, representing that he was an expert salesman and was thoroughly familiar with the cigarette trade and could sell large quantities of plaintiff's goods. That plaintiff's officers accepted the proposition of defendant Carter, and he took 30 shares of its stock and was made manager of plaintiff's sales department and entered upon his duties during the month of February, 1909, and continued to draw his salary until October 1, 1909. That, after becoming manager of plaintiff's sales department, "he purposely and willfully so managed the sales department of said business as to greatly decrease and injure the business of said company. He transferred salesmen from territory in which they were acquainted and were selling goods to other territory in which they were strangers," etc. Plaintiff alleges many other wrongful and injurious acts of defendant W. M. Carter, all of which it avers injured its business. "That from various facts and circumstances, plaintiffs have reason to believe, and therefore allege, that the said W. M. Carter was working in the interest of and carrying out the plans and scheme of the defendant the American Tobacco Company, while he was drawing a salary from the Ware-Kramer Tobacco Company, and that his conduct and work, as alleged in the complaint herein, was the work and acts of the defendants, and had for their purpose the injury and destruction of Ware-Kramer Tobacco Company and its elimination as a competitor of the defendant. * * * That the various acts and doings of the said W. M. Carter, as set forth in the complaint herein, were done and performed in pursuance of an agreement and conspiracy entered into by all the de-

fendants herein for the purpose of injuring and destroying the business of the plaintiff Ware-Kramer Tobacco Company."

Before proceeding to assign this allegation to its place in the list of plaintiff's grievances, it is proper to note defendants' contention that the matter is not sufficiently alleged in accordance with the provisions of the Code of Civil Procedure in this state. The Code (Revisal 1905, § 489) prescribes that matter must be alleged either as of the plaintiff's knowledge, or "upon information and belief," and the form of verification makes the distinction between matter alleged of his own knowledge which he avers to be true and matter alleged upon "information and belief" which he avers that "he believes to be true." While the language used is not so clear as it should be, it would seem that the plaintiff intends to allege that it has information—"it has reason to believe," and therefore "alleges." This, reasonably interpreted, means that the allegation is upon "information and belief." If, however, this paragraph be eliminated, the next succeeding one has no limitation, but expressly alleges that defendants were in a conspiracy to injure and destroy plaintiff's business by the means set out. It is doubtful whether the first paragraph contains any allegation affecting any of the defendants other than W. M. Carter. There is no ambiguity in the language of the next. Conceding all that is claimed by defendants, in regard to what is fair competition in business, the limits of which have not been very definitely fixed, it is clear that, eliminating all doubtful averments, sufficient allegation remains, admitted by the demurrer, to place the acts of the defendants beyond the limits of fair competition. It would seem that the language of Judge Shelby in People's Tobacco Co. v. American Tobacco Co., supra, in this connection, is appropriate:

"It is alleged that plaintiff was engaged in interstate trade, or business, such as that engaged in by the defendant companies, and that the described acts of the defendants were done for the purpose of obtaining a monopoly and destroying the business of the plaintiff. It is further alleged that, by such conspiracies and combinations of the defendants, and by their effort to obtain a monopoly, the business of the plaintiff was injured greatly, and that the plaintiff was damaged (in a large amount).  *  *  *  If the averments are true—and the exception of no cause of action admits them to be true—the defendants are guilty of the misdemeanors charged in the first and second section of the act, and the plaintiff has been injured in its business or property within the meaning of the second section."

Here the plaintiff alleges that, by the means set out, it had built up a valuable business, interstate trade, and that this business has been destroyed, and its property is in the hands of a trustee in bankruptcy. Certainly, if these allegations are established to the satisfaction of a jury, it would be difficult to avoid the conclusion that the plaintiff Ware-Kramer Tobacco Company has been injured in its "business and property." It requires no argument to show that the course of conduct pursued by defendants towards the Ware-Kramer Tobacco Company from the moment its projectors conceived the idea of bringing it into corporate existence, through its struggle to take upon itself the form and features of organic life, and while, in defiance of the efforts of defendants to throttle its activities, it maintained an existence with

.promise of success, were calculated and intended not only to restrain but to destroy it. While it may be that some one or more of the "things done," as set out in the complaint, were in and of themselves within the limits of "fair competition," they are, as said by Mr. Justice Holmes, "bound together as the parts of a single whole. The plan may make the parts unlawful." No argument is required to show that the scheme was intended to restrain the interstate trade of plaintiff, and that it "brought that result to pass." While it is true that "fair competition is the life of trade," it is equally true that "unfair and excessive competition" is death to trade—of all competition—followed by the establishment of "monopoly," which my Lord Coke defines to be:

"An institution or allowance to any person or persons, bodies politic or incorporate, of or for the sole buying, selling, making, working or using anything, whereby any person, or persons, bodies politic or corporate are sought to be constrained of any freedom or liberty that they had before, or hindered in their lawful trade."

And which our Constitution, from 1776 to the present day, declares to be "contrary to the genius of a free state and ought not to be allowed." Const. N. C. art. 1, § 31.

The demurrer must be overruled, and defendants allowed 60 days from June 15, 1910, to file answers.