## BOYLE et al. v. UNITED STATES.

### No. 4207.

Circuit Court of Appeals, Seventh Circuit.
April 15, 1930.

Rehearing Denied May 29, 1930.

A. B. Dennis and Walter Brewer, both of Danville, Ill., for appellants.

Mary G. Connor, of Washington, D. C., for appellee.

Before ALSCHULER, PAGE, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

Appellants, with thirty-seven others, were indicted on the charge of violating section 1 of the Act of July 2, 1890 (15 USCA § 1), known as the Sherman Anti-Trust Law, for engaging in a conspiracy or combination in

restraint of interstate trade and commerce in candy and other confectionary products. Some pleaded guilty; thirty-five went to trial, of whom nineteen were acquitted, and sixteen, including appellants, were convicted and sentenced. For appellants it is contended that the evidence did not show their guilt, and that interstate commerce is not involved.

Most of the defendants were members of an unincorporated association known as Chicago Association of Candy Jobbers, which had many years of existence. Its professed objects were improvements in the business and social conditions of its members. Its membership of about 250 was composed almost entirely of so-called candy jobbers, whose business it was to buy candies and to sell them in Chicago and vicinity, usually carrying their stocks in automobiles or wagons, and delivering directly to the purchasers, who were generally small retailers. They purchased their stocks from manufacturers and dealers in Chicago, as well as in Milwaukee, New York, Boston, and other places in various states. Their collective business was large, running into several millions of dollars yearly.

In course of time there developed a disposition and purpose to control this automobile and wagon trade in Chicago, and to prevent subjobbers [1] who were members from trading with customers of the members, and customers of the members from trading with manufacturers and subjobbers who would not agree that they would not sell their products in Chicago and vicinity to any who were not members of the association, and who did not maintain prices fixed by the association. For some years efforts to that end were more or less unavailing, and in about April, 1926, the association employed as its manager one Pastor, who promised and inaugurated a vigorous policy.

He proposed an amendment to the constitution and by-laws as follows:

All members are requested to comply with the following:

A. To not purchase candy from manufacturers who do not support our association.

B. To not purchase candy from subjobbers who do not support our association.

C. To not sell to any one who jobs candy and is not a member in good standing.

D. All members who are subjobbers are requested to comply with the following rules:

---

[1] Contrary to the general usage of this term, a subjobber, in the business here described, is one who sells to these jobbers.

E. To not sell candy to a jobber or subjobber who is not a member in good standing of the Chicago Association of Candy Jobbers.

F. To not sell any candy, and have same called for, to any jobber or subjobber who is not a member in good standing of the Chicago Association of Candy Jobbers.

The amendment was unanimously approved, first at a meeting of the executive committee, at which all of appellants were present except Goldsmith, Boyle, and Briley. All but these three were members of the executive committee, save that Goldsmith was a member of the "Amalgamated Benevolent Club," an organization which was composed of Jewish candy jobbers, and which paid dues to the Chicago Association of Candy Jobbers; Goldsmith generally representing them at meetings of the executive committee of the latter.

Much of the controversy raged about retail tobacco dealers who were selling nationally advertised chocolate and nut bars of various descriptions manufactured by concerns of other states, and who were not members of the association, and to whom, it was claimed, manufacturers and subjobbers would cut prices.

Pastor (who was indicted and pleaded guilty, and was the government's main witness) actively and aggressively undertook to force manufacturers and subjobbers to comply with his terms. He visited manufacturers in various states and openly told them they must cease selling to nonmembers of the association in Chicago and elsewhere, or they could sell nothing to association members. He undertook a system of issuing cards of identification and approval to representatives of such manufacturers as complied with his terms; and such as did not comply promptly lost customers and trade, through the efforts of Pastor and his associates. Nonmembers of the association who refused to join it, as well as members who did not comply with orders, were roughly handled. There were assaults and bombings and smashing of store fronts, all manifestly directed to the terrorizing of the small dealers, in order to require them to become members, and such as were members to abide by the manifest policy of the management of the organization, and to refrain from buying from such manufacturers and subjobbers as would sell to those in and about Chicago who were not members of the association, and to prevent manufacturers and subjobbers from

selling to any who were not members of the association.

It is apparent from the evidence that all of this had the direct or indirect co-operation, encouragement, and approval of the executive committee, including Goldsmith as a sort of ex officio or associate member thereof. Evidently in recognition of Pastor's efficiency, and by way of approval of his course, he was given a very substantial raise in salary.

As for Boyle, we find no evidence in the record connecting him consciously with any combination in restraint of interstate commerce. Membership in the organization would not alone imply participation in such a conspiracy or combination. Under the administration of Pastor's predecessor, which was evidently too mild to give satisfaction, Boyle was an investigator, as he says, mainly of the disappearance of goods, but he held no position during Pastor's administration, and had even ceased to be in the candy business long before Pastor appeared on the scene.

The contention that appellants themselves were not engaged in interstate commerce is not of importance. It is not necessary to a violation of the statute that the transgressors themselves be engaged in such commerce. Knauer v. United States (C. C. A.) 237 F. 8. The pertinent inquiry is, Did they enter into a combination which had, or would have, the effect of restraining interstate commerce? Their manifest purpose was, in part, to embarrass, divert, and restrain the trade of various foreign manufacturers of and dealers in candies and confectionery, and thereby to diminish, and if possible altogether to suspend, the flow of that commerce into Chicago and vicinity.

Under the authorities we are clearly of the opinion that interstate commerce was here involved, and that a conspiracy or combination in its restraint appears. Eastern States, etc., Ass'n v. United States, 234 U. S. 600, 34 S. Ct. 951, 58 L. Ed. 1490, L. R. A. 1915A, 788; Montague & Co. v. Lowry, 193 U. S. 38, 24 S. Ct. 307, 48 L. Ed. 608; Wholesale Grocers', etc., v. Federal Trade Com. (C. C. A.) 277 F. 657; Boyle v. United States, 259 F. 803 (7 C. C. A.); Belfi et al. v. United States, 259 F. 822 (3 C. C. A.); Hale v. Hatch & North Coal Co., 204 F. 433 (2 C. C. A.).

Without discussing at large the participation of each appellant, the record abundantly assures us that as to each and all of appellants, other than Boyle, there was evidence which warranted the jury's conclusion that they combined and conspired for the purpose and with the effect of restraining trade or commerce between the states. No other error appears seriously to be alleged and urged, and indeed we find no other allegation of error worthy of discussion.

The judgment against appellant Boyle is reversed, and as to him the cause is remanded to the District Court for another trial. The judgments against appellants Briley, Goldsmith, Hoffman, Jepsen, Kerksick, Lauritsen, and Meisterling are affirmed.