## O'BRIEN et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. June 5, 1923.)

No. 3768.

**Monopolies ⬤⟹29—Combination to restrain interstate commerce not dependent on amount of commerce restrained.**

It is not a defense to a charge of combining to restrain interstate commerce, in violation of Sherman Anti-Trust Act, that the amount of commerce restrained was small, but the offense is found in the direct and absolute character of the restraint.

---

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Criminal prosecution by the United States against James O'Brien and others. Judgment of conviction, and defendants bring error. Affirmed.

O. M. Rogers, of Covington, Ky., and A. C. Hall, of Newport, Ky., for plaintiffs in error.

Sawyer A. Smith, U. S. Atty., of Covington, Ky. (John E. Shepard and Rodney G. Bryson, Asst. U. S. Attys., all of Covington, Ky., on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

PER CURIAM. While a strike was in progress at the rolling mills in Newport, Ky., just across the river from Cincinnati, the mills management arranged to sell a steel billet to a Cincinnati manufacturer. The purchaser was to take delivery at the mills, and accordingly sent over from Cincinnati an automobile truck, the driver of which was instructed to get the billet and bring it across the river into Ohio. After he had received it at the mills, loaded it on his truck and started back, he was accosted by the four plaintiffs in error, and as a result of the conversation he turned back to the mills, unloaded the billet, and went back to Cincinnati with his empty truck. The plaintiffs in error were indicted for having conspired to restrain and obstruct interstate commerce in violation of the Sherman Act (Comp. St. §§ 8820–8823, 8827–8830). It was the theory of the prosecution that the respondents were, in effect, strike pickets, and that by threats and intimidation they compelled the truck driver to abandon the enterprise.

The point chiefly urged in support of reversal is that the effect of the Clayton Act (38 Stat. 730) is to exempt from the prohibitions of the Sherman Act any conspiracy which is merely in aid of a strike, and the overt acts in connection with which are only those things which are permitted to strikers by the express terms of the Clayton Act. It is quite unnecessary to decide this question. The trial judge expressed his belief that the Clayton Act did not have this effect; but in view of the specific language of the indictment, and for the purpose of the charge to the jury, he accepted the respondents' contention, and instructed that there could be no conviction unless the jury was convinced that there was such conduct by respondents and such a show of force as amounted to intimidation, rather than merely to "peaceful persuasion." The jury's necessarily implied finding that the respondents' conduct amounted to intimidation by threats of force is not without sufficient support in the record. The driver's testimony is that from six to ten men appeared in the road, stopped him, surrounded his truck, demanded to know what he was carrying, and, on being told the spokesman of the crowd told the driver he could not go any further. While no specific threats were made, the state of mind produced in the driver is indicated by his statement that he turned around in order to avoid trouble, and because his truck was a new one and he did not want it destroyed, not being able to buy another.

It is likewise urged that respondents' knowledge of the interstate

character of the shipment does not sufficiently appear. It is replied that when respondents engage in an act unlawful under the common law or the state law, it is not important whether they know that the facts bring their conduct also within the federal law. This question also need not be decided. It was not raised in the court below, even by the motion to direct a verdict upon the specific grounds recited; and there was substantial evidence that the respondents must have known that this shipment was bound for Cincinnati. Not only was the billet "prepared for delivery and marked," but carriage across the river was in the natural course of business at this point, and it is to be assumed that the truck carried the usual evidence that it was an Ohio car. .

It is also urged that the amount of commerce involved was too insignificant to justify invoking the Sherman Act; but we hold, as we did in Steers v. U. S., 192 Fed. 1, 112 C. C. A. 423, that the existence of the offense is found not in the amount of commerce restrained, but in the direct and absolute character of the restraint.

The convictions and sentences are affirmed.