PESSIN, Respondent, vs. FOX HEAD WAUKESHA COR-
PORATION, Appellant.

*November 10, 1938—February 7, 1939.*

For the appellant there were briefs by *George E. Ballhorn* and *Alfred W. Ecks* both of Milwaukee, attorneys, and *Frank T. Boesel* of Milwaukee and *John P. Boesel* of Madison of counsel, and oral argument by *Mr. Ecks* and *Mr. John P. Boesel*.

*William J. Morgan* of Milwaukee, for the respondent.

The following opinion was filed December 6, 1938:

FRITZ, J. The principal controversy in this action is in relation to whether there existed an enforceable contract between the parties, by virtue of which the defendant was under any obligation to deliver beer to the plaintiff. There was no written contract between the parties. The plaintiff relied upon an alleged oral agreement, but the making thereof was disputed by the defendant. According to the plaintiff's testimony, an oral agreement was made on March 30, 1933, by which it was agreed that the plaintiff was to be and would act as the sole distributor of the defendant's beer in certain counties in this state, and as such should have the exclusive sale thereof in that territory; that he would not sell any other beer than that produced by the defendant; that it would supply the plaintiff with all of the beer which he required as such distributor; that for case beer he was to be charged $1 less per case than the retail price to Milwaukee customers, and for keg beer $3 less per barrel than defendant's price to Milwaukee tavern keepers; and that by an oral modification of the agreement on April 7, 1933, the defendant agreed to deliver to plaintiff at least one hundred barrels of draught beer per week.

By answers to questions in a special verdict the jury found that it was agreed between the parties on March 30, 1933, that the defendant "would supply plaintiff with as much draught beer and case beer as the plaintiff would require in his business as defendant's distributor;" and that they also agreed that after April 20, 1933, defendant would supply the plaintiff with at least one hundred barrels of draught beer per week. In connection with those findings the jury assessed the plaintiff's damages on account of the defendant's failure to deliver as much draught beer as the plaintiff required between April 7 and April 20, 1933, at $166; and his damages for the defendant's failure to deliver at least one hundred barrels per week after April 20, 1933, at $3,106. No question was submitted to the jury as to any reciprocal contractual obligation or duty on the part of the plaintiff. However, on motions after verdict the court concluded that there was a valid contract binding the defendant to supply to the plaintiff the quantities of beer according to his requirements. In connection with arriving at that conclusion the court stated,—

"the plaintiff's promise to act exclusively as defendant's distributor and the negative covenant to sell no other beer than defendant's constituted an agreement to purchase and take from defendant all the beer that he could sell in his territory, and was a consideration for the promise of the defendant to furnish plaintiff's requirements."

On the trial and on this appeal the defendant contends that the agreement was not valid as a contract because of uncertainty and lack of mutuality in that, as the plaintiff was commencing a new business in which his requirements were unknown and might be either great or small, he did not become bound to order and pay for any definite quantity of beer. In support of that contention the defendant relies upon such precedents as *Teipel v. Meyer,* 106 Wis. 41, 43, 81 N. W. 982, in which an alleged contract of sale to sell plaintiff certain

brands of beer, "so long as the said plaintiff should thereafter continue to buy the said beers from the said defendant," was held invalid because there was no binding obligation on the part of the buyer to continue to do anything. The court said,—

"The most important missing element in the contract is that the plaintiff does not promise to do anything. He may or may not continue to buy beer of the defendant, as he pleases. He is not bound to continue in business for a day, and is not bound by any promise to buy a single keg of beer. The contract was as clearly one-sided as it possibly could have been made. It had the effect merely to bind the plaintiff to receive and pay for such beer as he might from time to time order from the defendant. Further than this, it had no binding force, for want of mutuality."

Those conclusions are applicable in the case at bar. Under the agreement relied upon by the plaintiff he likewise was not bound to continue in business for any period. He could do so or refrain therefrom as he pleased, and was under no legal obligation to buy any beer. At best the agreement was but in the nature of a continuing offer to sell beer to the plaintiff at stipulated prices upon plaintiff paying in advance for a quantity which he ordered to have delivered to him at the defendant's brewery. But until there was an acceptance in that manner by the plaintiff, there was no effective contract of sale. *Hopkins v. Racine M. & W. I. Co.* 137 Wis. 583, 119 N. W. 301. It is true that agreements to supply a buyer according to his requirements are considered sufficiently definite as to the quantity purchased to be enforceable when the discretion, wants, or needs of the buyer are referred to an existing situation, such as an established business or a known enterprise, and are intended to be controlled thereby. Those circumstances add a measure of certainty sufficient to give the contract mutuality. *Excelsior Wrapper Co. v. Messinger,*

116 Wis. 549, 556, 93 N. W. 459. In that case the court, in applying that rule said,—

"Thus, an agreement to carry all coal which the other party might desire to have carried in a given period, while wholly uncertain if the other party has no coal and is engaged in no business or enterprise to regulate his desire to ship, is reasonably certain in the case of a mine owner, the product of whose mines will regulate the quantity which he will need, and therefore be likely to desire, to ship, if the construction be adopted that his option is to be controlled by the course of such business. . . . The situation presented in the instant case falls clearly within the principle of the later decisions. The plaintiff had an established business, of character and magnitude well known to the defendant. It could not, with profit to itself, seriously modify the volume of that business for the mere purpose of increasing or diminishing the amount of any given class of supplies. The exact quantity of paper, therefore, which it would want or need in that business during a prospective year, while uncertain at the time of the making of the contract, was sure to become reasonably certain in the course of the year; and the contract was not merely an optional one with the plaintiff, but bound it as well to take, as it did the defendant to furnish, such paper, of the quality designated, as should be needed for that business. This, under the authorities above cited, constitutes sufficient mutuality to give full validity to the contract, and make either party liable to the other for its breach."

It follows that, excepting in so far as the defendant's continuing offer to supply beer was accepted from time to time by the plaintiff's ordering and paying in advance for a definite quantity, there was no enforceable contract of sale for the breach of which the defendant is liable. Each acceptance in that manner resulted in an enforceable contract for but the quantity then ordered and paid for; and due delivery of that quantity was apparently made in performance of each contract. For the reasons stated, there can be no recovery by the plaintiff of the amounts assessed by the jury as damages

for defendant's failure to deliver as much keg beer as the plaintiff required between April 7 and April 20, 1933, and at least one hundred barrels per week after the latter date; and therefore the judgment must be modified by deducting those amounts with interest thereon from the amount of the judgment.

The defendant further contends that the court erred in including as part of the amount of the judgment the sum of $861.60 with interest by reason of overcharges in billing case beer to the plaintiff in excess of the agreed price therefor, and the sum of $1,183.26, assessed by the jury as damages on account of defendant's conversion of certain cooperage, which was the property of the plaintiff. In holding that the plaintiff was entitled to recover those sums, the court approved certain findings by the jury which, in connection with issues determined by the court, warranted the recovery.

The defendant contends that the evidence is insufficient to support the findings in those respects, and the damages for the conversion of cooperage are excessive and speculative. Those contentions cannot be sustained. There is a sharp conflict in the evidence on those issues, but the credibility thereof and the proper inferences to be drawn therefrom were for the jury and it was within the latter's province to find thereunder as it did. As the court has approved those findings, the awards based thereon must be affirmed.

In connection with the appeal from the judgment, the defendant also appealed from an order made after the entry of judgment in denial of a motion by the defendant to have the judgment amended and entered in the name of William J. Morgan, as assignee of the plaintiff and the real party in interest. In the order it is provided that it was "denied . . . without prejudice to the right of the court to determine the effect of said instruments and the respective rights created by them in event the same ever come before the court." By

reason of that provision the order is not a final order. *A. J. Straus Paying Agency v. Caswell Building Co.* 227 Wis. 353, 356, 277 N. W. 648. Consequently, it is not an appealable order because the only provision authorizing an appeal from an order made after judgment is in sec. 274.33 (2), Stats., and in order to be appealable thereunder, the order must be final. *A. J. Straus Paying Agency v. Caswell Building Co., supra.* It follows that the appeal from the order in question must be dismissed.

*By the Court.*—Judgment modified as stated in the opinion, and affirmed as modified. The appeal from the order is dismissed.

A motion for a rehearing was denied, without costs, on February 7, 1939.