## JOHNSON et al. v. JOSEPH SCHLITZ BREWING CO.
### No. 25.

District Court, E. D. Tennessee, S. D.
May 21, 1940.

For opinion on defendant's motion to dismiss or to quash the return of service, see 28 F.Supp. 650.

Whitaker & Whitaker, of Chattanooga, Tenn., for plaintiff.

John A. Chambliss, of Chattanooga, Tenn., and Walter D. Corrigan, Kenneth F. Webster, and Francis H. Parson, all of Milwaukee, Wis., for defendant.

DARR, District Judge.

In the first cause of action plaintiff, a local beer distributor, sues defendant Brewing Company alleging a conspiracy between defendant and certain other brewing companies in violation of Section 1 of the Sherman Anti-Trust Act (26 Stat. 209; 15 U.S.C. § 1, 15 U.S.C.A. § 1), and asks for triple damages in accordance with Section 7 (26 Stat. 210; 15 U.S.C.A. § 15 note) of that act. The pertinent provisions of Sections 1 and 7 of the Sherman Act read as follows:

"1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal."

"7. Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any district court of the United States * * * and shall recover threefold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee."

The jury's verdict was based on the first cause of action, without regard to the second and third causes of action, and no decision is necessary with respect to the two latter causes of action.

The facts alleged by the plaintiff are that the defendant, Pabst Brewing Com-

pany, and Anheuser-Busch, Inc., three of the largest domestic brewers of beer, entered into a conspiracy whereby each of the three agreed to refrain from selling or soliciting the sale of draft beer to the exclusive draft beer retail accounts of either of the other parties to the conspiracy. By reason of this conspiracy, plaintiff claims that he was injured in his business because the operation of the conspiracy precluded him from selling draft beer to a number of retailers in his distributing area. Plaintiff offered evidence which, if believed by the jury, sustained these allegations.

■ At the close of the evidence defendant moved for a directed verdict, which was denied, and this court submitted the case to the jury subject to the right to reconsider all questions of law after verdict rendered, as provided by Rule 50 (b), Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The jury found for the plaintiff in the sum of $5,000. Defendant has now moved for judgment non obstante veredicto or, in the alternative, for a new trial. Elaborate briefs and reply briefs have been submitted by both parties and have been carefully considered. The case is now ready for decision.

■ At the threshold, the court is met by an incidental question. At one point in his redirect examination plaintiff testified to a certain agreement between himself and defendant whereby defendant would purchase certain bar fixtures from Pabst and leave them in a tavern in Chattanooga to whose proprietor plaintiff could then sell draft beer. This is alleged to involve ownership of retail equipment by a brewer in violation of Chapter 69 of the Public Laws of Tennessee of 1933, and of the Federal Alcohol Administration Act, 27 U.S.C. §§ 205, 207, 27 U.S.C.A. §§ 205, 207. By its provisions the federal act in this respect is made to conform altogether to the state law. 27 U.S.C. § 205(b) (3), 27 U.S.C.A. § 205(b) (3). It is perhaps doubtful under Tennessee law whether the proposed transaction, as to which the testimony is conflicting, would be unlawful. Cf. Cubbins v. Ayres, 4 Lea, Tenn., 329; Hickman v. Booth, 131 Tenn. 32, 34, 173 S.W. 438; State v. Smith, 5 Humph., Tenn., 394, 395, 396, and exhibits in this case setting forth regulations and opinions under Chapter 69 above. Defendant invokes the well-defined rule that parties to an illegal agreement will not be aided by the courts. Plaintiff contends that there was no illegal agreement. Assuming without deciding that the alleged agreement was illegal, it is clear that plaintiff does not sue upon any such agreement but upon defendant's alleged violation of the Sherman Act, and plaintiff's damage was occasioned by such alleged violation of the act, rather than by any violation of the "agreement". Therefore, the "agreement" cannot be used to defeat plaintiff's right of action based upon the overriding statutory policy of the Sherman Act, if that right of recovery is otherwise clear. Cf. United States v. Socony-Vacuum Oil Co., Inc., 60 S.Ct. 811, 84 L.Ed. ——, decided May 6, 1940.

■ But if it could be argued that the question of contract might effect the amount of damages, it is to be remembered that the court instructed the jury to find for the defendant if they found its refusal to permit plaintiff to sell was because of defendant's policy against subsidization whether or not subsidization was illegal. This direction was the most favorable defendant could have asked because it directed the jury to find for defendant whether or not the "agreement" was legal or illegal, and the jury could have found for plaintiff as they did only by finding that the "agreement" played no part in defendant's refusal to permit plaintiff to sell, but that such failure was caused solely by defendant's adherence to its illegal conspiracy. Hence defendant's reliance upon the illegal "agreement" must fail.

■ Defendant next urges that there is no evidence of any conspiracy between it, Pabst, and Anheuser-Busch, Inc. Short shrift may be given this contention. There is a clear conflict in the evidence, and the jury found this point in plaintiff's favor. Its verdict is conclusive. Defendant's reliance on United States v. Socony Vacuum Oil Co., 7 Cir., 1939, 105 F.2d 809, is illtimed in view of its recent reversal by the Supreme Court. United States v. Socony-Vacuum Oil Co., 60 S.Ct. 811, 84 L.Ed. ——, decided May 6, 1940. That decision clearly shows that plaintiff's evidence here is competent and the jury's verdict therefore determines the existence of an illegal conspiracy.

■ Defendant also denies that interstate commerce is here involved, saying that any restraint here "was merely a

restraint aimed at a local enterprise and not in any manner at interstate commerce". In view of the fact that the defendant is shown to be systematically engaged in interstate commerce and was found by the jury to have entered a conspiracy to stifle competition throughout the country, this is a startling proposition and if accepted would nullify the Sherman Act. Ample authority exists against it, however, authority which leaves no doubt but that defendant acted in restraint of interstate commerce. Thus defendant's contention was squarely ruled against in Steers v. United States, 6 Cir., 1911, 192 F. 1, referred to with approval upon this exact point by the Supreme Court in its recent decision in United States v. Socony-Vacuum Oil Company, supra, at footnote 59, and quoted with approval in O'Brien v. United States, 6 Cir., 1923, 290 F. 185, 187, which involved the shipment of the single steel billet. In the latter case the court said: "It is also urged that the amount of commerce involved was too insignificant to justify invoking the Sherman Act; but we hold, as we did in Steers v. United States, 192 F. 1, 112 C.C.A. 423, that the existence of the offense is found not in the amount of commerce restrained, but in the direct and absolute character of the restraint."

To the same effect, see, also, the following authorities: Indiana Farmer's Guide Pub. Co. v. Prairie Farmer Pub. Co., 293 U.S. 268, 55 S.Ct. 182, 79 L.Ed. 356; National Labor Relations Board v. Fainblatt, 306 U.S. 601, 606, 59 S.Ct. 668, 83 L.Ed. 1014; United States v. Patterson, D.C., 201 F. 697, reversed on other grounds but approved on this exact point by the Circuit Court of Appeals in 6 Cir., 1915, 222 F. 599, certiorari denied, 238 U.S. 635, 35 S.Ct. 939, 59 L.Ed. 1499; Hicks v. Bekins Co., 9 Cir., 1937, 87 F.2d 583; Buyer v. Guillan, 2 Cir., 1921, 271 F. 65; Oxford Varnish Corp. v. Ault & Wiborg Corp., 6 Cir., 1936, 83 F.2d 764.

Against these authorities defendant relies only upon one appellate court decision (Leader v. Apex Hosiery Co., 3 Cir., 1939, 108 F.2d 71) and that is not final, argued in the Supreme Court on April 2, 1940. That case involves several hotly controverted and uncertain points as to the application of the Sherman Act to labor disputes in view of Sections 6 and 20 of the Clayton Act (38 Stat. 731, 738; 15 U.S.C. § 17, 15 U.S.C.A. § 17, 29 U.S.C. § 52, 29 U.S.C.A. § 52) and of the provisions of the Norris-LaGuardia Act (47 Stat. 70, 29 U.S.C. §§ 101–115, 29 U.S.C.A. §§ 101–115) but even if affirmed, it is now apparent that the Supreme Court will not approve the interstate commerce theory of that case (108 F.2d at pages 79, 80 which portion of the opinion defendant alone relies upon here) in view of the recent explicit declaration upon this point in United States v. Socony-Vacuum Oil Co., supra [60 S.Ct. 845], in footnote 59, that "the amount of interstate or foreign trade involved is not material (Montague & Co. v. Lowry, 193 U.S. 38, 24 S.Ct. 307, 48 L.Ed. 608), since § 1 of the Act brands as illegal the character of the restraint not the amount of commerce affected. Steers v. United States, 6 Cir., 192 F. 1, 5; Patterson v. United States, 6 Cir., 222 F. 599, 618, 619". Therefore, this contention of defendant must be overruled.[1]

Defendant next contends that plaintiff failed to prove a valid and enforceable contract between plaintiff and defendant. Here defendant again confuses this first cause of action under the Sherman Act with a suit on a contract. Once an illegal conspiracy in violation of the Sherman Act is shown, all the plaintiff need do is to show his damages. Montague v. Lowry, 193 U.S. 38, 24 S.Ct. 307, 48 L.Ed. 608; Indiana Farmer's Guide Pub. Co. v. Prairie Farmer Pub. Co., 293 U.S. 268, 55 S.Ct. 182, 79 L.Ed. 356; Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684. For the same reason defendant's

[1] Since submitting this opinion, the Supreme Court has affirmed the case referred to in this paragraph as styled Leader v. Apex Hosiery Company, 3 Cir., 1939, 108 F.2d 71. The Supreme Court opinion was announced on May 7, 1940, 60 S.Ct. 982, 84 L.Ed. ——.

The Supreme Court did not approve the interstate commerce theory of the Circuit Court of Appeals, but said: "And in the application of the Sherman Act, as we have recently had occasion to point out, it is the nature of the restraint and its effect on interstate commerce and not the amount of the commerce which are the tests of violation. See United States v. Socony-Vacuum Oil Co., Inc., 309 U.S. ——, 60 S.Ct. 811, 84 L.Ed. ——, note 59. Cf. National Labor Relations Board v. Fainblatt, 306 U.S. 601, 606, 59 S.Ct. 668, 671, 83 L.Ed. 1014."

claim that the contract between it and plaintiff violated the Statute of Frauds (Section 121.04 of Wisconsin Statutes, Section 7197 of Williams' Tennessee Code) is immaterial as to plaintiff's recovery under the Sherman Act. If it were necessary so to decide the court would be prepared to hold the contract valid and not violative of the Statute of Frauds. Pessin v. Fox Head Waukesha Corp., 230 Wis. 277, 280, 281, 282 N.W. 582; 27 C.J. 263, 264.

■ Defendant's basic contention is that the conspiracy found by the jury whereby each of the three brewing companies agreed neither to solicit or sell to exclusive draft customers of any of the other two companies, and to bind their distributors willy-nilly to this policy, was not an unreasonable restraint of trade but rather a reasonable agreement between competitors. Defendant's chief reliance is upon Appalachian Coals Inc. v. United States, 288 U.S. 344, 53 S.Ct. 471, 77 L.Ed. 825, and upon the N.R.A. Code for brewers. However, these were the identical defenses relied upon by the defendants in the Madison oil case (United States v. Socony Vacuum Oil Co., supra), and the Supreme Court there examined these defenses in great detail in a price-fixing agreement.

■ That an agreement not to sell to a particular person or class of persons is unlawful under the Sherman Act has long been established. In Binderup v. Pathé Exchange Inc., 263 U.S. 291, 311, 312, 44 S.Ct. 96, 100, 68 L.Ed. 308, the Supreme Court declared the law upon an analogous situation as follows: " * * * The direct result of the alleged conspiracy and combination not to sell to the exhibitor, therefore, was to put an end to his participation in that business. Interstate commerce includes the interstate purchase, sale, lease, and exchange of commodities and any combination or conspiracy which unreasonably restrains such purchase, sale, lease or exchange is within the terms of the Anti-Trust Act, denouncing as illegal every contract, combination or conspiracy 'in restraint of trade or commerce among the several states.' The allegation of the complaint is that the exhibitor had been procuring films from some of the distributors but had refused to buy from others, who thereupon induced the former to cease dealing with him, and that all then combined and conspired, in restraint of interstate trade and commerce, to prevent him from carrying on his said business; that they

have ever since refused to furnish him with film service and have caused unexpired contracts which he held with some of them to be illegally cancelled. It is difficult to imagine how interstate trade could be more effectively restrained than by suppressing it and that, in effect, so far as the exhibitor is concerned, is what the distributors in combination are charged with doing and intending to do. It is doubtless true that each of the distributors, acting separately, could have refused to furnish films to the exhibitor without becoming amenable to the provisions of the act, but here it is alleged that they combined and conspired together to prevent him from leasing from any of them. The illegality consists, not in the separate action of each, but in the conspiracy and combination of all to prevent any of them from dealing with the exhibitor. See United States v. Schrader's Son, Inc., 252 U.S. 85, 99, 40 S.Ct. 251, 64 L.Ed. 471; Bobbs-Merrill Co. v. Straus (C.C.) 139 F. 155, 191. The contracts with these distributors contemplated and provided for transactions in interstate commerce. The business which was done under them—leasing, transportation, and delivery of films—was interstate commerce. The alleged purpose and direct effect of the combination and conspiracy was to put an end to these contracts and future business of the same character and 'restricts, in that regard, the liberty of a trader to engage in business' (Loewe v. Lawlor, 208 U.S. 274, 293, 28 S.Ct. 301, 303 (52 L.Ed. 488, 13 Ann.Cas. 815) and, as a necessary corollary, to restrain interstate trade and commerce, in violation of the Anti-Trust Act."

To fix customers in agreement with others is inherently as bad as to fix prices. Both stifle competition, and lead to monopolistic power.

■ In view of the recent decision of the Supreme Court in Ethyl Gasoline Corp. v. United States, 60 S.Ct. 618, 84 L.Ed. ——, decided March 25, 1940, it is apparent that the practices of which defendant has been found guilty is but the first step toward securing a monopolistic power which may lead to price-fixing. Defendant has been found by the jury to intend a violation of the act. As the Supreme Court has pointed out "when that intent and the consequent dangerous probability exist, this statute [i. e., the Sherman Act], like many others, and like the common law in some cases, directs itself against that

dangerous probability as well as against the completed result". Swift & Co. v. United States, 196 U.S. 375, 396, 25 S.Ct. 276, 279, 49 L.Ed. 518, quoted with approval in United States v. Socony Vacuum Oil Co., supra at footnote 59; Boyle v. United States, 7 Cir., 40 F.2d 49, certiorari denied, Briley v. United States, 282 U.S. 857, 51 S.Ct. 33, 75 L.Ed. 759. It is the duty of this court to forestall the first step of defendant and its co-conspirators toward monopolistic power. The jury found against defendant's professions of innocence. As stated by the Supreme Court in United States v. Socony Vacuum Oil Co., supra, "a different conclusion would require a belief that respondents were 'engaged in a philanthropic endeavor'. * * * They obviously were not." The basic aim of the Sherman Act is to preserve intact a system of free competitive economic enterprise in this country. Failing to meet this standard, defendants' scheme must be struck down. The verdict of the jury must be upheld.

■ Two contentions of defendant remain to be passed upon. Defendant has made an elaborate and detailed argument to the effect that no proof of plaintiff's exact damages was put before the jury, and that the decision of the jury must necessarily be conjectural upon the point of damages. Among the many other items of damage properly assessable, improved trade for plaintiff if the restraint were removed is one. See Montague v. Lowry, supra; Ellis v. Inman, Poulson & Co., 9 Cir., 1904, 131 F. 182. The decision of the Supreme Court in Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544, is a complete and exact answer to defendant's contentions in this regard. Plaintiff is the injured party, injured by a deliberate conspiracy of the defendant and others. If exact proof is not shown, the malefactor must bear the burden. Cf. Note in 78 A.L.R. 858 at page 865. Section 7 is, and was intended to be, punitive in nature and deterrent in effect.

The defendant further contends that it should be awarded a new trial on the ground that the verdict was contrary to the law and the evidence and that the instructions of the court were erroneous. For the reasons above stated, the court is of the opinion that there is no merit in these contentions of defendant.

■ There is one other matter for disposition. Before the issues were made the defendant filed a motion questioning the jurisdiction of the person of the defendant as to the second and third causes of action in the complaint. These causes of action were based on fraud and contract. At the same time the defendant filed a motion for a bill of particulars. The court at that time was of the opinion that the filing of the motion for a bill of particulars was an entry of a general appearance by the defendant.

On the hearing for a motion for a new trial the court announced that this ruling was erroneous. The Rules of Civil Procedure for District Courts, 28 U.S.C.A. following section 723c, has changed the law that has heretofore been effective in this regard. Rule 12 provides that the defense of jurisdiction of the person might be raised in the answer. It is evident that after a bill of particulars has been asked for and granted or denied, the defendant could then, by answer, raise the question of the jurisdiction of the person. The court's opinion on this matter was published in D.C., 28 F.Supp. 650, and the court is now of the opinion that the views expressed therein were erroneous and not well taken.

The defendant has filed a brief insisting that by this erroneous ruling the court confused the issues and the defendant should be granted a new trial.

This question was not raised in the motion for judgment notwithstanding verdict nor in the motion for a new trial. Under the rules the defendant had ten days in which to file the motions as were filed, and the court was limited to ten days in which to grant the new trial on its own motion.

■ No judgment notwithstanding the verdict nor a motion for a new trial can be granted except upon the complaints in the motions. The question cannot now be considered because not raised in the motions and it is too late for the court to consider on its own initiative.

■ But if the question could be considered, the court is of the opinion that practically the same evidence was introduced in the trial of the case upon the three causes of action as would have been done under the first cause of action upon which the verdict was based.

The jury was carefully instructed to consider the first cause of action, and if the verdict was found for the plaintiff on

this cause of action that the remaining two causes of action should not be considered. The jury returned a verdict on the first cause of action. There has been no injustice done the defendant by reason of this erroneous ruling.

All other contentions of the defendant not specifically discussed herein have been carefully examined and have similarly been found wanting. The motions of defendant are accordingly denied, and the reserved questions of law ruled in plaintiff's favor.

Order accordingly.