HOFFMANN and wife, Appellants, vs. PFINGSTEN and wife, Respondents.

*November 6—December 4, 1951.*

162

For the appellants there were briefs by *Posner & Perkins* and *Lines, Spooner & Quarles,* attorneys, and *Louis Quarles, Maxwell H. Herriott, Herman J. Posner,* and *David A. Fox* of counsel, all of Milwaukee, and oral argument by *Mr. Herriott* and *Mr. Herman J. Posner.*

*William J. Calvano,* attorney, and *A. L. Skolnik* of counsel, both of Milwaukee, for the respondents.

BROWN, J.  Hoffmann's first contention on the appeal is that the learned trial court erred in holding that the contract as modified December 14, 1946, was void for want of mutuality and on this issue we have concluded that the judgment must be affirmed.  The original contract contained an obligation on the part of Hoffmann to order 25,000 bottles of dressing per month and clearly there was mutuality of obligation while that provision remained but this requirement was struck out December 14, 1946.  There may be some doubt as to whether or not the words of the amendment were designed to eliminate Pfingsten's obligation to manufacture and supply any dressing thereafter as well as to relieve Hoffmann of the obligation of ordering it.  We conclude that the intent was only to affect the minimum orders required of Hoffmann, reaching this result the more easily because the amendment was prepared by Pfingsten's lawyer and included a provision respecting price which was clearly for Pfingsten's benefit.  Where different interpretations are possible that must be preferred which is against the party who prepares the instrument.  *Deree v. Reliable Tool & Machine, Inc.* (1947), 250 Wis. 224, 26 N. W. (2d) 673.

The resulting contract, then, purports to require Pfingsten to fill Hoffmann's orders, whatever they may be, in consideration of Hoffmann's acts or forbearances which remain in the instrument after the modification.  We find two: That upon termination of the agreement *by Hoffmann,* which may never take place, he will give Pfingsten his lists of customers and employees; and, that until he terminates he will distribute no competitor's shoe dressing.  We are not concerned now with what the parties must do if the contract is ended.  The question is whether there is mutuality while it is in force. Hoffmann's only agreement, effective during that period, is that he will refrain from handling competitive products. Such a forbearance appeared in the contract of *Pessin v.*

*Fox Head Waukesha Corp.* (1939), 230 Wis. 277, 278, 282 N. W. 582, but we held that mutuality was lacking, nevertheless, there being no undertaking to order the manufacturer's product at all. That case was reviewed and approved in *Strauss v. Eulberg Brewing Co.* (1947), 250 Wis. 579, 27 N. W. (2d) 723.

On Hoffmann's behalf it is submitted that the facts bring this action within the rule of *Excelsior Wrapper Co. v. Messinger* (1903), 116 Wis. 549, 93 N. W. 459, and *Eastern R. Co. v. Tuteur* (1906), 127 Wis. 382, 105 N. W. 1067. It is argued that when the contract was modified in 1946 Hoffmann had an established business and the cases just cited hold that agreements to supply a buyer according to the requirements of his business are sufficiently definite as to the quantity which he must purchase to be enforceable. The *Excelsior Wrapper Co.* and the *Eastern R. Co. Cases* differ from the present one in that their contracts specified that the buyer would take and the seller would supply such goods or services as the buyer required for a definite time in carrying on the buyer's business, to which such goods or services were necessary and incidental. In Hoffmann's case there is no reference in the contract to any business whatever or to filling the requirements thereof and actually he has no business (other than trade in Pfingsten's dressing), the requirements of which will determine the quantity of dressing which he will be bound to take and pay Pfingsten for. If Pfingsten should be dissatisfied with Hoffmann's orders, considering them either too large or too small, we can find no relief in the contract for him. The original obligation for Hoffmann to take 25,000 bottles monthly was struck out and nothing was put in its place. The named standard being gone we do not see how Pfingsten could have appealed to another which the parties had never referred to, either in the original or in the modified agreement, and this is particularly

so where Hoffmann had no obligation to give all his time to "Old Tanner" nor to prosecute its development vigorously but was permitted by the contract to engage in other business which did not deal in products similar to "Old Tanner." We conclude, therefore, that the cases where the requirements of established businesses measured the obligations of both parties do not apply to the present situation and those cases do, of which *Teipel v. Meyer* (1900), 106 Wis. 41, 81 N. W. 982, and *Pessin v. Fox Head Waukesha Corp., supra,* and *Strauss v. Eulberg Brewing Co., supra,* are examples, in which it was held that the contract to supply is void for want of mutuality because there is no corresponding duty to order.

Our conclusion that the contract as modified lacks mutuality and is therefore void makes it unnecessary to consider propositions that Pfingsten may end it at will because its duration is indefinite. The argument has much force and was resolved in Pfingsten's favor by the trial court but the solution is not necessary to our determination.

We agree with the learned trial court that there is no evidence that defendant Martin conspired to interfere with Hoffmann's contractual rights.

There remains Hoffmann's contention that the trade-mark with the name "Old Tanner" is his property because it was his effort as a distributor which gave it publicity and value. Counsel cites numerous decisions to the effect that the trade-mark was part of the good will created by the promotional activity of Hoffmann and is inseparable from it. However, we consider that Hoffmann, himself, recognized that the name belonged to Pfingsten. The contract provided: ". . . in case parties of the first part [Pfingstens] shall desire to sell their formula, *including the name,* of the product . . . party of the second part [Hoffmann] shall have the first chance to purchase. . . ." There was no revision of this portion of the agreement and we can see no ground for holding that

anything in the conduct of the parties deprived Pfingsten of the property right thus recognized.

*By the Court.*—Judgment affirmed.