MID-STATES UNDERWRITERS, INC., Appellant, v. LEON-HARD, d/b/a MAIN AGENCY, Respondent.*

*No. 174.  Argued September 10, 1970.—Decided October 6, 1970.*
(Also reported in 179 N. W. 2d 914.)

* Motion for rehearing denied, with costs, on December 1, 1970.

For the appellant there were briefs by *Quarles, Herriott, Clemons, Teschner & Noelke*, attorneys, and *Maxwell H. Herriott* of counsel, all of Milwaukee, and oral argument by *Maxwell H. Herriott*.

For the respondent there was a brief by *Petersen, Axley, Brynelson & Herrick* of Madison, and oral argument by *James C. Herrick*.

BEILFUSS, J.   We deem the issues to be:

1.   Is the language of the purchase price provision of the contract clear and unambiguous?

2.   Is the plaintiff entitled to reformation of the contract?

The trial court in its memorandum opinion states, in part, as follows:

"The dispute in this case involves the difference between the language of the signed contract and the language in the first written offer by the buyer dated January 13, 1966. The language in Section 9 (a) in the signed contract is as follows:

" '9 (a) The purchase price to be paid by buyer for the business of Main Agency shall be a minimum of thirty thousand dollars ($30,000), plus fifty per cent (50%) of commissions earned on Main Agency business earned from February 1, 1966 to January 31, 1970, in excess of thirty thousand dollars, the minimum to be paid in installments as follows: . . . .'

"The language in the January 13, 1966 offer was:

" 'Purchase price is $30,000 plus 50% of all net commissions earned during a 48 month period after date of our acquisition less said $30,000.'

"In both instances the language is clear and unambiguous and means two different things. The difference involves a simple application of arithmetic.

"Assuming that net commissions for the four years total $80,000, under the contract the $30,000 would first be subtracted from the $80,000 in order to determine the 'excess,' and the remainder would then be divided in two, which when added to the minimum price of $30,000 would equal a purchase price of $55,000.

"Under the clear language of the offer dated January 13, 1966, the $80,000 commission would first be divided in two and then the $30,000 subtracted, thereby resulting in a purchase price of $40,000."

The appellant contends that the language of the offer of January 13th and the language of par. 9 (a) have the same meaning and that the $30,000 must be deducted from 50 percent of the net commissions rather than from 100 percent of the net commissions as insisted upon by respondent and agreed to by the trial court. We must reject this contention and agree with the trial court that the language of par. 9 (a) of the contract is not ambiguous and that the mathematical illustrations given by the trial court correctly reflect the meaning of the language of the contract and the offer.

The language of the contract must prevail if it varies in meaning from the offer, unless it can be shown there was a mutual mistake or a unilateral mistake and fraud [1] so as to permit the contract to be reformed.

The contract was entered into after two preliminary conferences between the parties and a three-hour conference between the parties and their respective attorneys. In addition to these conferences the evidence clearly shows that on January 27th, the day after the second preliminary conference, the respondent Leonhard conferred with his attorney, Mr. Herrick. Mr. Herrick made notations on an office memorandum, introduced into evidence (Exhibit 15), which set forth arithmetic examples as given by the respondent Leonhard. These examples provided by Leonhard were consistent with the language of the contract.

Mr. Herrick's first rough draft of the contract did not contain the language of the contract finally entered into, but the testimony of Mr. Leonhard reveals that at the final conference before the contract was put in its final form he discussed mathematical examples and insisted the contract provided "in excess of" rather than "less," and "minimum" rather than "total."

The final conference of February 2d was attended by Mr. Durand and his attorney, Mr. Jackman, as the purchasers, and by Mr. Leonhard and his attorney, Mr. Herrick, as the sellers. The conference was in Mr. Jackman's office; it lasted three hours; the provisions of the contract were discussed, including par. 9 (a); Mr. Jackman (or his secretary) typed up the final version and it was thereafter signed by Mr. Durand, an experienced businessman, and his associates, licensed attorneys who are part owners of Mid-States Underwriters, Inc.

From these facts it can hardly be said that Mr. Leonhard was mistaken as to the content of par. 9 (a) or his intention or understanding of it. In any event, this court

---

[1] *Clark v. Moru* (1963), 19 Wis. 2d 503, 120 N. W. 2d 888.

on review cannot say that the finding of the trial court that there was not a mutual mistake is against the great weight and clear preponderance of the evidence.

The appellant has also argued that where changes in language of a contract are requested by one party any possible ambiguity must be resolved against the party requesting the change.[2] As an abstract statement of a legal rule this proposition is undoubtedly correct, but in our opinion it has no application here for two reasons. First, we do not believe the language of the disputed paragraph of the contract is ambiguous and, secondly, it appears that under the circumstances of the final conference where both parties and their attorneys participated and appellant's attorney actually reduced the contract to writing that the rule should not be invoked against the respondent.

In support of this argument the appellant also contends that because expert witnesses testified that the purchase price was higher than customary, and that Leonhard did not specifically make known to Durand the significance of the language change, reformation should be permitted.[3]

This argument must fall because the purchase price here also included the obligation of the seller Leonhard to provide his services and efforts for a period of four years and a covenant not to compete. The trial court found the purchase price was not unconscionable and we agree.

The finding of fact by the trial court that there was no mutual mistake nor fraud on the part of the seller so as to entitle the purchaser to reformation of the contract is not against the great weight and clear preponderance of the evidence and is approved. It is our opinion the contract should be enforced as decreed by the trial court.

*By the Court.*—Judgment affirmed.

[2] *Hoffmann v. Pfingsten* (1951), 260 Wis. 160, 50 N. W. 2d 369.
[3] Restatement, 2 *Contracts*, p. 973, sec. 505.