SIMON BROS. COMPANY, INC., Respondent, v. MILLER BREWING COMPANY, Appellant.

*No. 75-749. Submitted on briefs February 8, 1978.—Decided June 6, 1978.*

(Also reported in 266 N. W. 2d 369.)

For the appellant the cause was submitted on the briefs of *Paul Noelke, Stuart Parsons* and *Quarles & Brady* of Milwaukee; *John F. Savage* and *Warren H. Dunn*, general counsel of Miller Brewing Company, of counsel, both of Milwaukee.

For the respondent the cause was submitted on. the brief of *Boardman, Suhr, Curry & Field* of Madison.

DAY, J.  In this action, Simon Bros. Company, Inc., sought injunctive relief and damages because Miller Brewing Company terminated a distributorship arrangement without giving notice. Miller has appealed from a judgment that awarded Simon Bros. $6,000 in damages. Simon Bros. has filed a notice of review and has argued that the damage award is too low and that the thirteen month period the trial court determined to be sufficient for notice of termination of the agreement is too short.

The issue on this appeal is whether Miller is liable to Simon Bros. for damages for terminating without notice a distributorship arrangement that provided that either party could terminate the relationship at any time without incurring liability to the other.

From 1933 to July, 1974, Simon Bros. was the exclusive distributor of Miller products in Dane County. At times during that period, Simon Bros. was also Miller's exclusive distributor in neighboring counties.

In addition to beer, Simon Bros. distributed liquor and wine. In 1974 beer sales accounted for 18 percent of Simon Bros. total sales. As of July 1, 1974, 85 percent of Simon Bros. beer sales were Miller products. Since 1935 Simon Bros. had not sold any major brand beer other than Miller products. Simon Bros. has maintained equipment and facilities and employed personnel for the promotion of Miller products.

In the early years of the relationship Miller and Simon Bros. kept the understanding on an informal oral basis. At the time, Miller's relationships with other distributors were on the same basis. Later Miller developed a written agreement entitled "Standard Conditions of a Miller Distributorship." Eventually this standard form contract between Miller and Simon Bros. was replaced by a letter agreement signed by officers of both companies and dated May 3, 1954. Among other things, this agreement provided:

We will sell you Miller beer for resale in the territory described at the end of this letter with the understanding that you will expend your best efforts in distributing and selling the same in such territory. . . .

As is the custom in our industry these sales to you are made on a shipment to shipment basis only. Either of us can terminate this relationship at any time without incurring liability to the other.

The letter agreement was silent as to whether the distributorship was exclusive. In fact Simon Bros. had an exclusive distributorship over the forty year period of the relationship with Miller; and the eastern field sales manager for Miller testified that it was advantageous to Miller for a distributor to have exclusive rights to its territory.

The letter agreement also provided for prices of the products, manner of payment, use of trade name, liability for stock on hand upon termination of the agreement and various other matters.

On July 5, 1974, Miller sent Simon Bros. a telegram terminating the distributorship agreement as of July 15, 1974. Also on July 5, 1974 Miller sent Simon Bros. a telegram cancelling orders Simon Bros. had already placed with Miller. Before the second telegram was received by Simon Bros. on Monday, July 8, 1974, a Simon Bros. truck left for Milwaukee to make a pick-up at the Miller Brewery. Upon arrival at the brewery, the driver was informed that Simon Bros. was no longer a distributor for Miller and the driver was unable to pick up any beer.

Simon Bros. commenced this action against Miller on July 12, 1974 by service of a summons and complaint asking the court to enjoin Miller from terminating the distributorship. An amended complaint seeking damages as well as injunctive relief was filed later.

Following a hearing on July 18, 1974, the court on August 30, 1974, issued an order enjoining Miller from terminating the Simon Bros. distributorship, pending the outcome of the action. The order also required Miller to furnish all the beer ordered by Simon Bros. under the same conditions as to price, delivery and promotion that were in effect between the parties on July 5, 1974. Finally, the order provided that pending the outcome of the action Miller could supply its products to another distributor, the House of Heileman, but not on terms more favorable than those provided to Simon Bros. Miller had selected the House of Heileman as its Dane County distributor after terminating the relationship with Simon Bros.

Pursuant to the court's temporary injunction, Simon Bros. and the House of Heileman served as dual distributors of Miller products from September, 1974, through

September, 1975, when the temporary injunction was vacated by the court.

In a decision supporting the temporary injunction order, the trial court pointed out that Miller had relied on the 1954 letter agreement, which provided that either party had a right to terminate the agreement at any time without liability. Simon Bros. had argued that the agreement was invalid and unenforceable and that the provisions of the Wisconsin Fair Dealership Law, Ch. 135, Stats., were applicable. In the alternative, Simon Bros. argued that it had common law rights against Miller even if Ch. 135 did not apply.

The trial court concluded that the agreement giving Miller the right to terminate the relationship at any time was invalid and unenforceable because the agreement did not require either party to do anything, Simon Bros. not having promised to order any stated amount of beer and Miller not having promised to accept any orders from Simon Bros. The trial court added that the agreement was not prospectively enforceable against either party. According to the trial court, the letter agreement provided nothing to terminate and Miller could not successfully rely on it.

The trial court found that Ch. 135 did not apply because the agreement was entered prior to April 5, 1974.[1]

Relying on *California Wine Asso. v. Wisconsin Liquor Co.*, 20 Wis.2d 110, 121 N.W.2d 308 (1963) the trial court concluded that the court could find terms in an implied contract absent an express agreement governing the continuing relationship between Simon Bros. and Miller; and the trial court found an implied agreement with a requirement of reasonable notice prior to termination.

[1] Sec. 135.03, Stats., has been amended by Ch. 171, Laws of 1977 to cover "a dealership agreement." Prior to amendment, it covered "a dealership agreement entered into after April 5, 1974." Sec. 135.04, Stats., provides for notice, 90 days in most cases, prior to termination of the dealership agreement.

At the trial of the action, Simon Bros. presented evidence that it had suffered a net loss of $14,328 for the months of July, August and September, 1974, when it was unable to distribute any Miller products. Miller presented evidence showing cause for terminating the distributorship.

In his "Decision and Findings of Fact and Conclusions of Law" filed on October 24, 1975, the trial court concluded that Miller was entitled to terminate its relationship with Simon Bros. upon giving Simon Bros. reasonable notice, even without a showing of cause, and that thirteen months (the period of dual distributorship during the temporary injunction) was clearly a period of reasonable notice. The trial court found that the abrupt termination of the distributorship by the telegram of July 5, 1974, was an unlawful and improper termination under the circumstances. Summarizing his decision at the time of the temporary injunction, the trial court said that he had held the May 3, 1954, letter was completely lacking in mutuality and therefore, in effect, bound neither party to any course of action; and that the parties were bound by an implied exclusive distributorship agreement. He had held that the relationship could not be terminated summarily and without notice except for the most flagrant violation of the implied agreement on the part of the distributor, which did not occur here.

The trial court found that Miller did not follow a proper procedure in terminating the distributorship and therefore, Simon Bros. was entitled to damages. The trial court awarded Simon Bros. $6,000 for the loss it suffered during the two month period in July and August, 1974 when Simon Bros. could not sell Miller products.

A judgment awarding Simon Bros. $6,000 and denying Simon Bros. injunctive relief was entered on December 19, 1975.

Miller has appealed from that judgment; and Simon Bros. has filed a notice of review in which it challenges

the trial court's finding that thirteen months was a reasonable period of notice and the finding that damages were $6,000. Other issues listed by Simon Bros. in the notice of review have not been pursued on the appeal.

Miller argues that the May 3, 1954, agreement is not lacking in mutuality and is therefore enforceable and terminable at the will of either party.

Simon Bros. argues that the trial court was correct in finding that the agreement lacks mutuality and that the court may imply a contract between the parties embodying such terms as their conduct and course of dealings show were agreed upon.

Simon Bros. and the trial court rely upon this court's decision in *California Wine Asso. v. Wisconsin Liquor Co.* In its assigned territories, Wisconsin Liquor Company was the exclusive distributor for California Wine Association products for fourteen years with no oral or written contract and no express provision for termination of the relationship. The relationship ended in July, 1961; but over two years earlier, in March, 1959, the manufacturer without giving prior notice to Wisconsin Liquor announced that another company would be a dual distributor in one of the territories. Wisconsin Liquor continued selling California Wine products as a dual distributor until July, 1961. The manufacturer commenced an action to recover payments for goods that it had shipped to the distributor; and the distributor counterclaimed for damages for breach of exclusive distributorship contracts. This court held that the manufacturer and the distributor had been bound by an implied exclusive distributorship contract; that the distributor was entitled to reasonable notice prior to termination of the contract; and that because reasonable notice was not given the distributor was entitled to damages.

The court held that the conduct and words of the parties during their long relationship implied an exclusive distributorship contract. The contract was binding and

enforceable and did not lack for want of mutuality because "a promise to promote the sale of a manufacturer's product or a *bona fide* effort to pursue the contract is sufficient consideration for an exclusive distributorship contract." 20 Wis.2d at 121.

In *California Wine Asso.* the court said that the exclusive distribution contracts were implied from the conduct of the parties and could be terminated at will provided there is reasonable notice. If the manufacturer had given sixty days' notice before termination it would not have been liable for a breach. In that case the appointment of a dual distributor constituted breach and termination of the agreement and the breach continued to run only for a period of reasonable notice after that time.

In the instant case, on the basis of the holding in *California Wine Asso.*, the letter agreement dated May 3, 1954, was a valid contract. Over the period of the relationship, Simon Bros. had an exclusive distributorship for Miller products and in return for that distributorship Simon Bros. in the May 3, 1954, agreement promised to expend its best efforts in distributing and selling Miller beer in its territory. Under *California Wine Asso.*, this promise to promote the sale of Miller's product is sufficient consideration for the exclusive distributorship. 20 Wis.2d at 121.

The trial court held that the contract was invalid and unenforceable for lack of mutuality on the ground that because the contract could be terminated at any time Simon Bros. was not required to buy products from Miller and Miller was not required to sell products to Simon Bros. This theory has been accepted in other courts. See *Ford Motor Co. v. Kirkmyer Motor Co.*, 65 F.2d 1001 (4th Cir. 1933) ; *Oak Distributing Co. v. Miller Brewing Co.*, 370 F. Supp. 889, 906 (E.D. Mich., 1973) ; and *Ford Motor Co. v. Alexander Motor Co.*, 223

Ky. 16, 2 S.W.2d 1031 (1928). As noted in *California Wine Asso.*, previous Wisconsin cases have held that mere forbearance of a distributor to sell competitors' products in an area without any undertaking to order any of the manufacturer's products at all is lacking for want of mutuality. *Hoffmann v. Pfingsten*, 260 Wis. 160, 168, 50 N.W.2d 369 (1951); *Pessin v. Fox Head Waukesha Corp.*, 230 Wis. 277, 278, 282 N.W. 582 (1939); and *Teipel v. Meyer*, 106 Wis. 41, 81 N.W. 982 (1900). However, the theory of lack of mutuality relied upon by all these cases was rejected by this court in *California Wine Asso.*, as pointed out above. Therefore, the May 3, 1954, agreement between Simon Bros. and Miller Brewing Co. is valid; and the remaining issue is whether under that contract Miller was required to give reasonable notice prior to termination.

As to termination of the distributorship, the agreement provided:

As is the custom in our industry these sales to you are made on a shipment to shipment basis only. Either of us can terminate this relationship at any time without incurring liability to the other.

In at least two cases appellate courts have held that no prior notice is required under contracts providing that either party may terminate the agreement "at any time." In *A. S. Rampell, Inc. v. Hyster Co.*, 3 N.Y.2d 369, 380–81, 144 N.E.2d 371 (1957) the plaintiff contended that the contract permitting either party to terminate it "at any time" was ambiguous and should be read to give both parties the power to terminate the agreement at any time upon reasonable notice. The Court of Appeals rejected this argument finding that the claim of ambiguity was wholly without merit. The court held that the contract did not require reasonable notice prior

to termination and the court refused to read such a requirement into the contract.

In *Parks v. Baldwin Piano & Organ Company*, 386 F.2d 828 (2nd Cir. 1967), also, the court held that a contract terminable "at any time" upon written notice by either party did not require notice prior to termination.

In the instant case, as in *A. S. Rampell* the contract is unambiguous: either party "can terminate this relationship at any time without incurring liability to the other." The contract fails to require notice prior to termination. On the contrary, it makes clear that termination may be "at any time" and says it shall be "without incurring liability to the other." This clearly implies no damage claim may be made in such termination. Whatever else the parties may have agreed to or impliedly agreed to, it is clear they agreed on termination of their relationship at any time by either party and without incurring liability. Therefore, Miller successfully terminated the contract with the telegram of July 5, 1974. Because the contract could be terminated without notice, Simon Bros. is not entitled to any damages for profits lost as a result of termination; and, thus, the judgment awarding Simon Bros. damages must be reversed.

*By the Court.*—Judgment reversed and cause remanded with instructions to dismiss the complaint.

ABRAHAMSON, J., took no part.