## UNITED STATES v. MOUNTAIN STATES LUMBER DEALERS ASS'N et al.

### No. 9338.

District Court, D. Colorado.
July 11, 1941.

James McI. Henderson, Sheridan Morgan, John W. Porter, and Joseph Williams, all of Denver, Colo., for the Government.

Quigg Newton, Jr., Richard M. Davis, Terrell C. Drinkwater, Newton, Davis & Drinkwater, Clyde C. Dawson, Jr., and Pershing, Bosworth, Dick & Dawson, all of Denver, Colo., Raymond M. Sandhouse, of Sterling, Colo., John E. Gorsuch, of Denver, Colo., Paul L. Martin, of Sidney, Neb., Benedict & Phelps and Horace F. Phelps, all

of Denver, Colo., and William L. Lloyd, of. Pueblo, Colo., for certain defendants.

SYMES, District Judge.

In this particular indictment the defendants are charged with a conspiracy to restrain commerce among the several states, in violation of § 1 of the Sherman Act, 15 U.S.C.A. § 1. Paragraph 20, the charging part, says defendants "have been and are engaged in a wrongful and unlawful combination and conspiracy to raise, fix, maintain, and stabilize retail prices for lumber and lumber products transported and shipped into the States of Colorado, Wyoming, and New Mexico from manufacturers located in other States of the United States, which combination and conspiracy has been and is now in restraint of the hereinbefore described trade and commerce". In viola-tion of § 1 of the Sherman Act.

The defendants' position is: The indictment does not sufficiently charge defendants with the offense of conspiring to restrain commerce among the several states, or state definitely the charge, or what is conspiracy to restrain intrastate commerce, as distinguished from interstate commerce. That the defendant lumber dealers are, according to paragraph 4 of the indictment "engaged in the business of purchasing, procuring, and receiving lumber and lumber products from the said manufacturers and wholesalers for the purpose of supplying the demand therefor by contractors, industrial concerns, and other consumers and purchasers."

Further that the defendants' activities alleged in the indictment are those of the usual local retailers purchasing commodities from local wholesalers for local trade, and that the Government's theory of jurisdiction is, as stated in paragraph 19, that there is a continuous chain of shipments of lumber or lumber products from outside the states of Colorado, Wyoming and New Mexico, through retail lumber dealers, to the consuming public within said states, and that the retail lumber dealers are the conduit through which lumber and lumber products from outside the states of Colorado, Wyoming and New Mexico are distributed to the consuming public, in and through said states. Counsel submit this theory of jurisdiction is unsupported by law. Let us see.

We adopt as part of this opinion the opinion this day filed in case No. 9337. United States v. National Retail Lumber Dealers Ass'n, 40 F.Supp. 448. The authorities there cited answer most of counsels' contentions. Assuming, as we must, that the defendants are capable of doing what they are charged with, does the indictment state a violation of the Act?

In Montague & Co. v. Lowry, 193 U.S. 38, page 44, 24 S.Ct. 307, 48 L.Ed. 608, the combination denounced was an agreement to prevent the dealer in tiles in San Francisco, not a member of the association, from purchasing or procuring the same upon any terms from any of the manufacturers who were such members, and all of those manufacturers who had been accustomed to sell to the plaintiffs were members. A nonmember dealer was also prevented from buying tiles of a dealer in San Francisco who was a member except at a greatly enhanced price over what he would have paid to the manufacturers, or to any San Francisco dealer who was a member if he, the purchaser, was also a member of the association.

The Court held this agreement restrained trade, for it narrowed the market to sales of tiles in California from manufacturers and dealers therein in other states, so that they could only be sold to the members of the association, and that it enhanced prices to the nonmember, as already stated. The Court points out that the sale of tiles between the manufacturers in one state and dealers in California was interstate commerce, and said, 193 U.S. page 45, 24 S.Ct. page 309, 48 L.Ed. 608: "It is urged that the sale of unset tile, provided for in the seventh section of the by-laws, is a transaction wholly within the state of California and is not in any event a violation of the act of Congress which applies only to commerce between the states. The provision as to this sale is but a part of the agreement, and it is so united with the rest as to be incapable of separation without at the same time altering the general purpose of the agreement. The whole agreement is to be construed as one piece, in which the manufacturers are parties as well as the San Francisco dealers, and the refusal to sell on the part of the manufacturers is connected with and a part of the scheme which includes the enhancement of the price of the unset tile by the San Francisco dealers. The whole thing is so bound together that when looked at as a whole the sale of unset tile ceases to be a mere transaction in the state of California, and becomes part of a purpose which, when carried out, amounts to and is a contract or combination in restraint of interstate trade or commerce."

See, also, Swift & Co. v. United States, 196 U.S. 375, where the language at the bottom of page 398, 25 S.Ct. 276, at page 280, 49 L.Ed. 518, if we substitute "lumber" for "cattle", would read as follows: " * * * commerce among the states is not a technical legal conception, but a practical one, drawn from the course of business. When lumber is sent for sale from a place in one state, with the expectation that it will end its transit, after purchase, in another, and when in effect it does so, with only the interruption necessary to find a purchaser at the retailer's yard, and when this is a typical, constantly recurring course, the current thus existing is a current of commerce among the states, and the purchase of the lumber is a part and incident of such commerce".

█ The Court further held that it does not matter that a combination of the nature charged embraces restraint and monopoly of trade within a single state, if it also embraces, and directed against, commerce among the states, and even if the separate elements of such a scheme are lawful, when they are bound together by common intent as part of an unlawful scheme to monopolize interstate commerce, the plan may make the parts unlawful.

█ And in Stafford v. Wallace, 258 U.S. 495, page 519, 42 S.Ct. 397, at page 403, 66 L.Ed. 735, 23 A.L.R. 229, the Swift case was affirmed, and the Court stated: "This court declined to defeat this purpose in respect to such a stream and take it out of complete national regulation by a nice and technical inquiry into the non-interstate character of some of its necessary incidents and facilities, when considered alone and without reference to their association with the movement of which they were an essential but subordinate part".

And, 258 U.S. page 521, 42 S.Ct. page 403, 66 L.Ed. 735, 23 A.L.R. 229: "Whatever amounts to more or less constant practice, and threatens to obstruct or unduly to burden the freedom of interstate commerce is within the regulatory power of Congress under the commerce clause, and it is primarily for Congress to consider and decide the fact of the danger and meet it".

█ And in National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, at page 36, 57 S.Ct. 615, at page 624, 81 L.Ed. 893, 108 A.L.R. 1352, it said: "The congressional authority to protect interstate commerce from burdens and obstructions is not limited to transactions which can be deemed to be an essential part of a 'flow' of interstate or foreign commerce. * * * The fundamental principle is that the power to regulate commerce is the power to enact 'all appropriate legislation' for its 'protection or advancement.' * * * Although activities may be intrastate in character when separately considered, if they have such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions, Congress cannot be denied the power to exercise that control".

See, also, the discussion in United States v. General Motors Corp., 7 Cir., 121 F.2d 376, May 1, 1941.

Counsel cites the language of Mr. Chief Justice Hughes in National Labor Relations Board v. Jones & Laughlin Steel Corp., supra, 301 U.S. page 30, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352, emphasizing the distinction between commerce among the several states and the internal concerns of a state. But in the same opinion it is said, 301 U.S. page 37, 57 S.Ct. page 624, 81 L.Ed. 893, 108 A.L.R. 1352: "Although activities may be intrastate in character when separately considered, if they have such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions, Congress cannot be denied the power to exercise that control".

And quotes with approval from Stafford v. Wallace, supra, that, 301 U.S. page 37, 57 S.Ct. page 624, 81 L.Ed. 893, 108 A.L.R. 1352: " 'Whatever amounts to more or less constant practice, and threatens to obstruct or unduly to burden the freedom of interstate commerce is within the regulatory power of Congress under the commerce clause * * * ' ".

█ This leads to the conclusion that the defendants need not necessarily be engaged in interstate commerce, provided, as alleged, the conspiracy directly affected the flow of lumber and lumber products from outside of Colorado to the ultimate consumer in Colorado through the defendants' retailers. It was so held in Boyle v. United States, 7 Cir., 40 F.2d 49, 51. There the agreement was to prevent members of an association from trading with customers of members, and customers of members from trading with manufacturers and jobbers, who would not agree that they would not sell their product in Chicago and vicinity to any who were not members of the association, and

who did not maintain prices fixed by the association. This scheme was carried out and resulted in the restraint of the trade of foreign candy dealers, and thus diminished the flow of that commerce into that vicinity. The court held it was apparent from the evidence that all of this had the direct or indirect cooperation, encouragement and approval of the association, and the court said:

"The contention that appellants themselves were not engaged in interstate commerce is not of importance. It is not necessary to a violation of the statute that the transgressors themselves be engaged in such commerce".

Similarly if the defendants at the bar, as charged, entered into a combination, directly affected interstate commerce, to force the retailers to adopt their method of distribution and doing business, and the latter cooperated therewith and aided in its success, they thereby affected the flow of lumber and lumber products from outside to the ultimate consumer who purchased from the retailer.

■ In addition to the Swift case and Stafford v. Wallace, supra, there are many other cases that hold the temporary stoppage of commerce on its way to the ultimate consumer does not remove the flow from the jurisdiction of the Federal Government. Among them are United States v. General Motors, supra; National Labor Relations Board v. Jones & Laughlin Steel Corp., supra, and Local 167 v. United States, 291 U. S. 293, page 297, 54 S.Ct. 396, at page 398, 78 L.Ed. 804, where the Court said:

"The evidence shows that they and other defendants conspired to burden the free movement of live poultry into the metropolitan area. It may be assumed that some time after delivery of carload lots by interstate carriers to the receivers the movement of the poultry ceases to be interstate commerce. [Citing cases]. But we need not decide when interstate commerce ends and that which is intrastate begins. The control of the handling, the sales and the prices at the place of origin before the interstate journey begins or in the state of destination where the interstate movement ends may operate directly to restrain and monopolize interstate commerce. [Citing cases]. The Sherman Act denounces every conspiracy in restraint of trade including those that are to be carried on by acts constituting intrastate transactions".

Therefore if the defendants' scheme interfered with the transportation and sale price by retailers before the movement began, they affected the free flow of interstate commerce.

■ In Schechter Poultry Corp, v. United States, 295 U.S. 495, at page 544, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947 the Court states Congress has the right to control intrastate operations in all matters that have such a close and substantial relation to interstate traffic that the control is essential or appropriate to secure the freedom of that traffic from interference or unjust discrimination, and to promote the efficiency of the interstate service, and that conspiracies to restrain interstate commerce are none the less within the reach of the Anti-Trust Act because the conspirators seek to attain their end by means of intrastate activities.

It does not take much of a stretch of the imagination to say that any restraint or control imposed at point of origin by wholesalers and manufacturers shipping a particular commodity in interstate commerce directly affects the price at which said commodity is later sold by the retailer. Therefore if the defendants' agreement in any way controlled or affected the transportation, sale or price to be charged by retailers made before the interstate movement began, they thus affected the free flow of interstate commerce.

The opinion in the Schechter case, supra, distinguishes the case in the very last paragraph of the opinion, that the attempted regulation of intrastate transactions there involved affected interstate commerce only indirectly, and distinguishes (295 U.S. page 543, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947), the cases cited (supra), dealing with a stream of interstate commerce, where goods come to rest within a state temporarily, and are later to go forward in interstate commerce. 295 U.S. page 543, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947.

We therefore conclude that under the circumstances of this case the objection that certain defendants may have engaged only in intrastate commerce is of no avail.

It follows that the demurrers and motions to quash this indictment should be and are hereby overruled.

It likewise follows that the demurrers and motions to quash in No. 9336 and No. 9339

be, and are hereby overruled, with the exception of the second count in No. 9336, which has already been quashed.